JEREMIAH PRICHARD *vs.* DANIEL FARRAR.

Suffolk.    March 18, 19. — October 1, 1874.    COLT & ENDICOTT, JJ., absent.

A., a creditor of a corporation, made a contract with B., the trustee for the bond-holders of the corporation, whereby he agreed, in consideration of the payment of $5000, to pay B. a certain proportion of the deficiency, in case certain bonds issued by the corporation and secured by a mortgage of its property, were not paid at maturity. A proceeding in chancery was brought in another state by B. against the corporation to foreclose the mortgage. This was resisted in the name of the corporation by A. and other stockholders who contributed money for the defence. A master appointed by the court of chancery passed upon the account of the trustee, and the court ordered the property to be sold at auction. It was bought by B., who was authorized by the court to bid, for less than the mortgage debt. B. then sued A. in this Commonwealth to recover the proportion of the deficiency agreed on. *Held*, that the judgment of the court in chancery had the same effect as if the contract had in terms referred to a suit for foreclosure in that court. *Held, also*, that the foreign judgment was *primâ facie* evidence against A. of the amount due under the mortgage unless the judgment was obtained by fraud or collusion. *Held, also*, that if the plaintiff charged the trust fund with the $5000 paid the defendant, it was a false charge. *Held, also*, that if the plaintiff had other funds which were properly applicable to the mortgage debt and which were not so applied, the account should be corrected accordingly. *Held, also*, that if the plaintiff allowed the property to be out of repair for the purpose of purchasing it, and did purchase it thereby for less than its value, he should be charged with its full value. *Held, also*, that if the defendant was aggrieved by a premature termination of the hearing before the master, it was no defence in this action.

CONTRACT to recover the sum of $3198.63, with interest, alleged to be due from the defendant to the plaintiff on the following agreement signed by the defendant :

"In consideration of the payment to me of the sum of five thousand dollars in lawful money of the United States by J. Prichard, trustee for the bondholders of the Vermont Iron Com-

pany, in settlement of my claim for an equal amount (less interest) against the said company, I hereby promise and agree that in case a certain number of mortgage bonds issued by said company, amounting in all to thirty thousand dollars, becoming due and payable on the twelfth day of April next, are not paid by said company at maturity, and the property, real and personal, mortgaged to said J. Prichard, trustee, as security for the full payment of said bonds and interest, prove insufficient, after paying all lawful charges and expenses, to satisfy and pay said bonds in full, such deficiency from this or any other cause, to the extent of one seventh part of the whole amount of such deficiency, shall be paid by me to said J. Prichard, trustee, as soon as such deficiency shall be ascertained."

The amended declaration alleged the incorporation in Vermont of the Vermont Iron Company ; that it authorized the defendant, its president, by a vote passed March 9, 1866, to issue bonds of the corporation to the amount of $30,000, and, to secure the payment thereof, conveyed all its real and personal property in mortgage to the plaintiff as trustee ; that the bonds were issued and were not paid when due ; and that the plaintiff as trustee instituted a suit to foreclose the mortgage in a court of chancery in Vermont ; that the case was carried to the Supreme Court of Vermont, which court decided that the mortgage and bonds were valid, that an account should be taken, and that the plaintiff should have a decree of foreclosure ; that a master was appointed to take the account ; that the parties to the suit appeared and presented their accounts, and the master made his report to the court, stating that there was due on July 12, 1870, on said bonds, as principal and interest, the sum of $28,692.10, and that the sum of $2730.36 was due the plaintiff for services and money expended in carrying on said trust estate above what he had received from avails of the trust property.

The amended declaration further alleged that on September 22, 1870, the court of chancery decreed that the said report be accepted, and that the property mortgaged be sold at auction under the direction of a master in chancery, unless before the sale the Vermont Iron Company should pay the plaintiff $31,422.46, with interest and costs ; that the master should execute a deed to the purchaser, and that the sale should bar the equity of redemp-

tion of the company and of all persons claiming under it ; that on October 13, 1870, the master sold the mortgaged property to the plaintiff for $10,000, and executed a deed of it to him ; that on October 14, 1870, the master presented his report of the sale to the court of chancery, and his report was confirmed ; that the defendant Farrar was one of the principal defendants in the cause in chancery and in the Supreme Court, and employed counsel to defend the same, and was actually and actively engaged in the defence thereof ; that on October 13, 1870, the deficiency in the assets of the said company to pay the bonds with interest amounted to $22,357.25 ; and the defendant owed the plaintiff one seventh part thereof, to wit, $3198.63.

The defendant's answer denied each and every allegation in the amended declaration, and alleged that the agreement if made was without consideration ; that the defendant, at the time the agreement was said to be made, held property of the Vermont Iron Company to the amount of $10,000 as collateral security for $5000 lent by him to the company ; that in consideration of his giving up this property the plaintiff paid this $5000 less the interest ; that the plaintiff agreed to apply the avails of this property on the bonds of the company.   The answer further denied that the defendant was a party to the litigation in Vermont, and averred that he had no notice thereof to appear and defend the same, and that he did not appear or employ counsel therein and had no knowledge of the proceedings in the cause ; that he did not appear before the master and was not notified to appear.   The answer then proceeded as follows :

" That one Fairfield was acting as the agent of the said Vermont Iron Company in collecting their testimony to prove their account against the said Prichard, trustee, and to disprove his account, and otherwise assisting in the preparation and trial of the said case ; and that in the absence of the counsel, or of any of the officers of the said company, and before the said matter of accounting had been heard, except that perhaps the said Prichard, and one other witness in his behalf, had been examined in chief but had not been cross-examined, the said Prichard, with the intent to prevent the said accounts from being examined by the said master, and thereby defraud the said company, did, unbeknown to said company, its officers or attorneys, bargain with the

said Fairfield, and for some considerations, as this defendant is informed and believes, paid to said Fairfield, and in other ways prevailed upon the said Fairfield, and the said Fairfield did agree in the absence of said company's officers and attorneys, and without any authority therefor, that no more testimony should be heard, and that the accounts of the said company should not be put in, and no arguments should be heard ; but that the master should make his report upon the matter as it then stood upon the testimony of the said Prichard and his witness uncross-examined , and that they reported the said agreement to the master, and closed the hearing, and dispersed before the counsel who had charge of the case for the company originally arrived, and the counsel for the said Prichard having agreed to hold the case open until he could arrive ; and that the master, without knowledge of the manner of the agreement, made his report, if he made one at all, in accordance with it ; whereby the said company, without any fault on its part, was deprived of its rights in the premises, and of being heard, and of presenting its account at all to the master, or having it in any way considered.

" And the defendant further says, that the said company had a large account against the said Prichard, trustee, and much larger than the amount due on the said mortgage bonds and all accounts which said trustee had against said company which they intended to present and have allowed, but were prevented by the acts of said Prichard ; that the said plaintiff had taken the iron and property which this defendant so had as security ; and the said company had delivered to him large amounts of other property to be applied upon said mortgage bonds, which was not included in the said mortgage ; all of which property the said Prichard had, and has not accounted for the same ; and the said Prichard also took possession of all the property of the said company, and its ores and works, and deprived the company of the use of the same ; but did have the use thereof himself as said trustee for a long time, and has not accounted for the use thereof, and has disposed of large amounts of the property of the said company, and has wasted and destroyed large amounts of the property of the said company, which he has so in possession, by his carelessness and negligence in the care of the same, and suffered the same which was not wasted or destroyed or disposed of to be run down and

depreciated in vaiue ; all of which he should render an account of and apply on the said indebtedness of the said company to him as trustee as between this plaintiff and defendant, and before this defendant can be made liable in this suit.

" And the defendant further says, if the said mortgaged property was sold as alleged in said declaration, that it was sold at very much less than its actual value; that it had been in the possession of the said Prichard for a long time before the sale, and up to the time of the sale ; and for the purpose of purchasing the same himself at very much less than its value, he had permitted the said property to become run down, out of repair, and not in proper condition to bring its value, and thereby did bid the property off himself, and now has the same ; which said property then was and now is of sufficient value to pay and satisfy the full amount that said pretended report found due the said Prichard, trustee as aforesaid, from said company ; and that said Prichard, trustee, should account for the full value of said property ; and there is and was no deficiency of property to pay the said claims in justice and equity or law as contemplated in the said supposed contract declared upon ; and this defendant does not owe the plaintiff anything."

Trial before *Wells*, J., who reported the case to the full court as follows :

" The incorporation of the Vermont Iron Company, under an act of the legislature of Vermont, the execution of the mortgages and mortgage bonds or notes, and of the agreement declared on, and the demand by the plaintiff upon the defendant before action brought, were not denied ; and it appeared that the defendant, from January, 1866, until after the termination of the litigation in Vermont referred to in the declaration and answer, was a stockholder (owning 1000 shares) and director and the president of said company.

" The plaintiff put in evidence the record of the said proceedings in the courts of Vermont, consisting of a suit in equity for the foreclosure of said mortgage, and a cross-bill ; a decree being rendered declaring said mortgage valid, and ordering an account of the trust under the same to be taken by a master ; and afterwards confirming the report of the master, and ordering a sale of the property ; and finally confirming said sale.

" The defendant, Farrar, was not made a party to these pro-ceedings, either by the form of the proceedings or by any process or notice issued to him to appear ; and he did not become a party to them or take any action therein in his own name. George A. Fairfield was appointed as agent to act for the corporation in the defence of the suit, at a meeting of the directors at which Farrar was not present ; but he knew of the intention to appoint Fair-field, and acquiesced therein.

" After the commencement of the litigation in Vermont, an assessment of twenty cents a share was made upon each share of the capital stock of the company (30,000 shares in all) for the purpose of providing funds for carrying on the litigation ; but, no money being paid in on this assessment, an arrangement was made by which certain stockholders associated together to defend said suit in the name of the corporation, for the benefit of such stockholders as should contribute to the expense thereof. Farrar was knowing to, acquiesced in and participated in this arrange-ment, and contributed money towards the same, amounting to one hundred and thirty-eight dollars ; the whole amount so con-tributed being about $900, which was received by the treasurer and paid over by him partly to the agent, Fairfield, who con-tinued to have charge of said litigation, and partly to the legal counsel employed to conduct the litigation. No meeting of the corporation or of the directors was held after this arrangement was made.

" Upon these facts, the plaintiff contended that the defendant was bound in the present suit by the decree rendered in Vermont, settling the accounts of the plaintiff as trustee, fixing the amount due on the mortgage notes or bonds, and confirming the sale of the property ; and thus showing the insufficiency of the mort-gaged property to satisfy and pay said notes or bonds, and the deficiency which existed ; one seventh part of which he claims to recover.

" The defendant denied the conclusiveness and competency of the decree for this purpose, and contended that the plaintiff must show by other evidence that the property was insufficient to pay said bonds. The defendant also relied on the averments con-tained in the answer, of other property received by Prichard in part payment of said bonds or notes, not contained in said mort

gages, and not applied, &c.; and also the averments in said an-swer as to collusion or fraud in the litigation in Vermont. No testimony was offered at the hearing in support of these averments; but if, in the opinion of the whole court, the decree in Vermont is conclusive; and if the defendant cannot be allowed to introduce evidence in support of said averments, then judgment is to be rendered for the plaintiff accordingly for the amount claimed. Otherwise, the case is to be sent to an assessor, with such directions as to the mode of making up the account and as to the effect, if any, to be given to the Vermont decree, as the court may deem proper. If the question of collusion or of the purchase of said property by the plaintiff are open and competent to affect the result, the facts relating thereto are to be heard and found by said assessor." The record of the proceedings in Vermont were made part of the report.

*C. Allen & E. S. Mansfield*, for the plaintiff.

*A. A. Ranney & R. Lund*, for the defendant.

AMES, J. The agreement which the defendant signed evidently looks forward to a default on the part of the corporation as an event not unlikely to happen. He was a creditor presenting his claim and receiving his pay, before the bonds which were secured by a mortgage of corporate property had been paid, and while it was uncertain whether the property so mortgaged would prove sufficient to pay them in full. The terms of the agreement imply that this payment to the defendant would diminish the funds applicable to those bonds, and that for that reason the defendant was to refund out of the money so paid to him a certain agreed proportion of the ultimate deficiency, if there should be a deficiency. The defendant must have understood that a process of foreclosure, and a sale of the mortgaged property, furnished the only mode, or at least an appropriate and suitable mode, in which the question whether the mortgaged property would prove sufficient to pay the mortgage debt could be effectually determined. He made the agreement therefore with the knowledge that it would be the duty of the plaintiff, whenever it became necessary, to enforce the mortgage for the benefit of the bondholders, by such legal process for foreclosure as was allowable and proper under the laws of Vermont, and that under such process the validity of the mortgage and the amount due upon it would be

judicially inquired into and determined.   This mode of proceeding must have been contemplated when the agreement was made as the mode in which it was to be ascertained whether the apprehended deficiency really existed, and the judgment of the court in Vermont must have the same effect between these parties as if the contract had in terms referred to a suit for foreclosure in that court.   *Rapelye* v. *Prince*, 4 Hill, 119.   *Brown* v. *Sprague*, 5 Denio, 545.   *Burke* v. *Miller*, 4 Gray, 114.   1 Greenl. Ev. § 523.

We must assume, from the defendant's position in the corporation, not only as a large holder of stock, but also as president and director, that he could not have been ignorant of the existence of the suit for foreclosure, or of its nature and importance. It is stated in the report that he was one of several stockholders who associated to defend against that suit in the name of the corporation, and who raised funds and employed counsel for that purpose.   It was a suit in which his personal interests were directly involved, and if, as must be inferred, the corporation was wholly insolvent, the question as to the amount due upon the mortgage must have been much more important to him, under his liability to contribute towards making up the deficiency, than it was to the corporation itself.   He was in court by his counsel, using the name of the corporation, litigating a question directly affecting his own interest, in a position to take part at every stage of the trial, with ample opportunity to call and examine witnesses, to cross-examine the plaintiff's witnesses, and to appeal from the decision.   His contract with the plaintiff as the representative of the bondholders was in substance a contract of indemnity against any loss that might result from the previous application of a portion of the trust funds.   He had made himself responsible that the mortgage should produce an amount sufficient to pay the mortgage debt.   According to the decision in *Lowell* v. *Parker*, 10 Met. 309, the consequence of becoming responsible for the performance of the duty of another would be that " a judgment against that other for a failure in the performance of such duty, if not collusive, is *primâ facie* evidence, in a suit against the party so responsible for that other.   If it can be made to appear that such judgment was obtained by fraud or collusion, it will be wholly set aside.   But otherwise it is *primâ facie* evidence, to stand until impeached or controlled, in whole or in part, by coun-

tervailing proofs." The position of the defendant in this respect is somewhat like that of a surety upon a bond ; as to which description of liability it has been held, in relation to a surety on an administrator's bond, that he, as well as the administrator, is estopped from controverting the validity of a judgment ascertaining the amount of a debt to be paid by the administrator, unless the judgment were suffered collusively by him. *Heard* v. *Lodge*, 20 Pick. 53. *Tracy* v. *Maloney*, 105 Mass. 90. *Cutter* v. *Evans*, 115 Mass. 27. In *Tracy* v. *Goodwin*, 5 Allen, 409, it was held that the obligation of a surety upon a constable's bond was a guarantee to a plaintiff for such amount as he has legally established to be due to himself from the constable ; and, in the absence of fraud or collusion, the judgment against him settles conclusively against his sureties, as well as himself, not only the right of the plaintiff to recover against him, but the amount of the damages. In *Littleton* v. *Richardson*, 34 N. H. 179, the law is thus laid down by Bell, J.: " When a person is responsible over to another, either by operation of law or by express contract, and he is duly notified of the pendency of the suit and requested to take upon him the defence of it, he is no longer regarded as a stranger." In every such case, if due notice is given to such person, the judgment, if obtained without fraud or collusion, will be conclusive against him, whether he has appeared or not. This view of the law is fully sanctioned in *Boston* v. *Worthington*, 10 Gray, 496, and in *Chamberlain* v. *Preble*, 11 Allen, 370 ; *Elliott* v. *Hayden*, 104 Mass. 180. In the case of a party having actual notice, and in fact participating in the defence, the service of formal notice upon him is unnecessary. *Lovejoy* v. *Murray*, 3 Wall. 1, 18.

The particulars of the plaintiff's account as mortgagee in trust for the bondholders are not before us, and we have no means of knowing in what way the balance alleged to be due to him for services, and money expended in carrying on the trust, was arrived at, or for what reason the defendant's share of the ultimate deficiency should have been fixed at one seventh. If, as intimated in the argument, the plaintiff has charged the trust fund with the $5000 payment to the defendant, or has reckoned that payment as a part of the mortgage debt, and has thereby increased the deficit contemplated by the contract, it is a false charge which the plaintiff cannot avail himself of, except in fraud of the defendant's

rights. The payment to the defendant was provisional, and in computing the deficit, should not be reckoned as a part of the mortgage debt. The problem to be solved required that the amount of the debt should be first ascertained, exactly as if no such payment had been made to the defendant. Then a deduction of the proceeds of the property from that amount would show the deficit to be ascertained. If, in addition to the proceeds of the sale, it should be found that there were other funds in the plaintiff's hands unaccounted for, properly applicable to the mortgage debt, then good faith on the part of the plaintiff requires that he should be charged with such additional funds also.

Our conclusion therefore is that the case must be sent to an assessor according to the terms of the reservation, with instructions that the decree of the Vermont court, if not shown to be collusive or fraudulent, is competent and also conclusive evidence of the validity of the mortgage, and the amount due upon it; that if he finds that the $5000 payment to the defendant has been charged by the plaintiff as if it were a part of the mortgage debt, in such a manner as to increase the amount of the deficit contemplated by the agreement, it is to be considered as a fraudulent charge and the account is to be corrected accordingly; and that if he finds other funds applicable to the mortgage debt, which the plaintiff should have so applied, and which he has concealed or withheld, the same should be applied accordingly by the assessor in the account. The assessor is also to inquire and report whether, as alleged in the answer, the plaintiff, for the purpose of purchasing the mortgaged property for less than its value, "did permit it to become run down, out of repair, and not in proper condition to bring its value," and did thereby bid off the property himself for less than its value; and if so, to correct the account by charging him with the full value at the time of the sale.

So far as the defendant professes to have been aggrieved by the premature termination of the hearing, his remedy was a motion to recommit the report of the master, with such order as to further hearing as the case might require. We are bound to presume that such a motion would have received all proper consideration.