JOSEPH MURRAY *vs.* JULIA A. RIVERS.

Hampden.   May 19, 1899. — June 30, 1899.

Present: HOLMES, KNOWLTON, MORTON, BARKER, & HAMMOND, JJ.

*Personal Injuries — Master and Servant — Due Care — Negligence — Law and Fact — Instructions — Matter within Discretion of Judge.*

Where a person is injured by having his hand crushed in a pile-driver upon which he was working, in an action under the employers' liability act, St. 1887, c. 270, for the injury, if his evidence tends to show that he was in the exercise of due care in the prosecution of his work when injured, and that the accident was due solely to the negligence of the defendant's superintendent in giving to the engineer an order in obedience to which the latter let the hammer fall before the former received from the plaintiff the word which was to indicate that the order properly could be given, and the defendant's evidence tends to show that when the plaintiff was hurt there was nothing in his duty which required him to be trying to move the pile, either with his hands or by other means, and that there was nothing to require the superintendent at that stage of the work to look out

for the plaintiff's safety, or to expect any signal or word from him before giving the order which released the hammer, the case is rightly submitted to the jury.

A request for a ruling, which is founded upon a partial view only of the evidence, and the evidence upon which it is founded being contradicted, may be rightly refused in the discretion of the judge, if correct instructions covering all aspects of the case as they related to the alleged negligence upon which the plaintiff relied are given in the charge.

TORT, under the employers' liability act, St. 1887, c. 270, for personal injuries sustained by the plaintiff through the alleged negligence of the defendant's superintendent. Trial in the Superior Court, before *Blodgett*, J., who allowed a bill of exceptions, in substance as follows:

The plaintiff was injured by having his hand crushed in a pile-driver on which he was employed in Northampton by the defendant.

The only negligence complained of was that while the plaintiff was in a crib in the ground under the pile-driver on a plank, and while he had his right hand on the end of a pile that had been driven into the ground until it stood in the crib about even with his shoulder, one Bouleau, the superintendent, gave the engineer word to start the hammer, which had been stopped, without waiting for the plaintiff to say "all right." The plaintiff contended that he of his own motion put his right hand on top of the pile to move it away from the runs of the driver so that he could get in a cant-hook, which he had in his left hand, so that he could move the pile; and that it was his duty to guide the pile all the way down.

The plaintiff testified, among other things, as follows:

" The date of my injury was April 28, 1897; I had been at work thirteen days, I think, on the pile-driver. At the time I was hurt Bouleau gave me my orders; Bouleau told the men what to do, where to go, and we would go by his orders. The day I was hurt nobody else was there giving orders except Bouleau. I was hurt between eight and nine o'clock in the forenoon. I was underneath the spile. Above me was a platform where the engine was standing, and then there were two rolls, one in the front and one in the back, and it was standing on those two rolls. These rolls backed it up, backwards and forwards and sideways, and this was sticking out and he wanted

to back it up. This platform was five or six feet above me, on which were all the other men except myself, and on it the engine. The iron thing that drives the pile I call the hammer; and the engine was standing from the uprights that held the hammer, that it fell through, I guess, about four or five feet. The hammer is raised by a rope running from this small upright engine. Bouleau told the engineer when to work his machinery to raise the hammer and let it fall. They had to keep a man down in where I was working right along; that morning it was Bouleau who set me to work under the platform; he set me to keeping that pile straight; at the time the accident occurred, it was kicking one side a little, and I put my hand on so I could get my cant-dog between; you have it in order to cant it up; there is a piece of iron; it grabs right in, and one side gets hold under side, and the other gets hold of the other side. I had one of these trying to force that over, and I could not get it between, and I put my hand on top of the pile. The pile was about six or seven feet out of the ground; it had been driven into the ground before I was injured; I took hold of the top of the pile; I tried to get my canter between, and just as I put it there, the hammer came down and smashed my fingers; I had been at work there with my canter on this pile trying to straighten it before the hammer came down about a minute or so. It was for me to say all right, then Bouleau would give the signal for the hammer to come down. That had been the customary way of doing the business. During the minute and a half or so that I had been trying to straighten that, Bouleau was standing in front in sight of me, where he could see me."

On cross-examination, the plaintiff testified, among other things, as follows:

" I was alone underneath, and there was one plank; I did not put the planks in position; I don't know who did; I was sent there; I stood there (showing) and the pile came down in parts, and the hammer came down on to it and drove it down; my work was to keep it straight. After it got down a long ways, it did n't keep itself straight; if it would n't go straight, we had to do some way to make it straight. When it first went down, I guided it. There is sometimes a kick; that is the way it happened; it had gone into the earth about ten feet, I should

say, when my fingers were hurt; I could n't say exactly how deep the crib was from top to bottom; I could n't tell how long it was, nor how wide; the end of this pile above the planks I stood on at the time I was injured was, perhaps, a little higher than my shoulder."

The cross-examination was further continued as follows: " *Q.* What occasion was there for you to put your hand on top of this pile? *A.* To keep it straight. — *Q.* Could you keep the pile straight by putting your hand on top? *A.* I could shove it. — *Q.* You could shove that pile that had gone down so many feet that it stood to your shoulders by putting your hand on top of it? *A.* Yes, it was like a mud hole there, it was soft. — *Q.* There had n't any one told you to move it, it was a part of your duty, and you did it of your own motion? *A.* It was my work. — *Q.* No one told you to at that particular time, it was part of your work, you say? *A.* Why, certainly, it was my work. — *Q.* Nobody told you then to move it? *A.* I was n't going to have him tell me every little while. I was sent there to do it, so I thought I would do it straight." He also testified as follows: " I knew if I got my hand under this hammer that came down on it, that it would injure me; Mr. Rivers and the foreman never told me to keep my hands off the top of the pile, and out from under the hammer; I mean to testify that in order to move this pile to get my canter in, I could do it better by putting my hand on top when it was even with my shoulder than by pushing it."

Arthur St. John, called as a witness by the plaintiff, testified that, at the time of the accident, he was working for the defendant; and further testified as follows:

" Preceding the time the plaintiff got hurt, and up to the day he got hurt, I saw Bouleau running the gang, telling them what to do, and showing them what to do, and everything, like a foreman, as I call it. The sides of the pile-driver, the uprights in which the hammer ran, went down below the top of the crib two or three feet."

Frank A. Rivers, who was the husband of the defendant, testified, among other things, as follows:

" I was managing this business for Mrs. Rivers at the time, pile-driving and all kinds of heavy work; I was at Northampton

in charge of this work that was in progress there pile-driving for heavy masonry, incident to the change of grades of the railroad. I had been to this place that morning before the plaintiff was hurt. They were driving piles; I don't know whether this particular pile. He was down in the crib; he was right on that platform (showing); that was his place where he was supposed to stand, that was his work; his duty was, when they lowered down the piles, to sway them in position; the piles put in there were forty-five to forty-eight feet long. There is a pulley-block, and the engine sits in this position (showing), and there is a rope goes right on to the pile, and there is what we call the nigger-head, that is a spool, and there is a man whose duty it is to hitch that pile on that rope, and then to hollo to the engineer, or make some motion to him, and he pulls it with this spool on the drum of the engine, and when it is pulled down they lower it down, and this man down in the crib sways it into position, that is, as near as he can, into the centre of the leaders. That was the plaintiff; that was all he had to do about it; he has nothing else to do during the driving of the pile but make his own platform, and there were 4000 feet of plank on the side of the platform; when they shifted the driver he had to move this plank; . he had a cant-hook in there; the use of it is, when they lower down the pile, if the pile happens to be a little crooked, he puts it between the leaders so as to turn it round and get it in position; when he gets it in position, there is no more use for a cant-hook; I did not see this particular pile; there was not any pile there so loose that it could be moved with the hand after it got down, so the top of it would be even with a man's shoulder standing on that platform, five hundred men could not do it. His work there did not call for his putting his hand on top of the pile that was down, so the top was about the top of his shoulder. I am my own superintendent."

On cross-examination, the witness testified: "It was part of Bouleau's duty to give the signal to the engineer when to let the hammer drop; he stood ordinarily right in front of the pile; there was nothing across here to obstruct his view."

Peter Bouleau testified for the defendant as follows: "I was working for the defendant in Northampton when the plaintiff was hurt; I was standing in front there, looking down to the

bottom ; he was down here back of the pile ; I signalled to have the hammer go ; I told him, ' Go ahead.' If the engineer could hear, the plaintiff could hear. When I said that, the plaintiff was doing nothing ; I can't tell where he stood, don't know whether he was standing or sitting; I saw him back in there, I don't know if he had a cant-hook; I did n't see it; he had nothing to do with the pile then. His duty was, he started the pile at the bottom, standing in back of the pile; when the leader was put on, he had no work ; all he had to do was to sway it in first, then step back, and had no more to do about the pile, he shifted his own floor himself, the planking ; when I told the engineer, ' All right,' I did n't see him ; I stood facing, he says, ' All right,' and I told the engineer to go ahead ; the engineer did not lift up the hammer to let it go down ; it simply dropped from there ; I do not know how he got his hand on top; I told him, every man, not to put their hand on top of the pile ; it was no good to put his hand on."

At the close of the evidence, the defendant requested the judge to rule that, upon all the evidence, the plaintiff could not maintain his action. The judge declined so to rule ; and the defendant excepted.

The defendant also requested the judge to rule that, if Bouleau did not know, and by the exercise of reasonable care would not have known, that the plaintiff's fingers were, or would be, on the top of the pile, it was not negligence on his part to give the signal to the engineer to start the hammer and to take the shelf out from under it to let it descend. But the judge declined so to rule, and, subject to the defendant's exception, instructed the jury, in substance, as follows :

" The law is perfectly well settled in this Commonwealth, that in every case of this kind the plaintiff must come into court and show, the burden being upon him and not upon the defendant, that the plaintiff, at the time when he was injured, was careful, and that no carelessness, no negligence on his part, either caused or contributed to cause the injury. He must go further, and not only show that he was not himself careless, but he must show that the superintendent was careless. In other words, he must show that the sole cause of his injury was the carelessness of Bouleau, you having first found that,

within the meaning of the statute, Bouleau was exercising superintendence and was the defendant's superintendent at this time and in this place. And the question whether the plaintiff was himself careful and Bouleau was careless, is of such a kind that I think it may be said to be a narrow and simple one. Up to a certain point all parties agree. It is agreed that the place of the accident was at the bottom of a crib which has been described to you, and that one of the duties of the plaintiff was, when a new pile was to be driven, to stand there in this crib and see that the pile entered the ground at the proper place and where it was intended to be driven, and when the pile was hoisted, to guide it so that it should be at the place where it was the intention that the pile should be driven. That it was his duty to do this is undisputed, and there is no dispute that while this was being done, the machine was not to be set in motion and the hammer was not to fall until the plaintiff gave notice that everything was in readiness by calling out in some way, ' All right.' Now it is not in dispute that the pile had been driven into the earth for a considerable distance. The plaintiff tells you about how high the top of the pile was from the ground. The work was suspended for some reason. You may have no doubt that it was suspended because the pile was not going down exactly in the way it was intended that it should go, that it was inclined a little one way or the other out of the perpendicular. The plaintiff says that he had a duty to perform at that time, and that in the performance of that duty it was proper for him to put his hand upon the top of the pile, and he tells you what he did it for, what he purposed to do after that, and he says that in accordance with the course of the business of driving piles there, the machine was not to be started, the hammer was not to be allowed to fall, until he gave notice. Now, here the parties wholly differ. The defendant says that after the driving began, after the plaintiff had seen that the pile entered the ground at the place where it should enter, the plaintiff had nothing more to do with the driving of that pile; that his duty after that was to move the planks at the bottom of the crib so as to be in readiness for driving the next pile; and that when the pile did not go down as it was intended that it should, that was regulated by

moving the machine upon the top of the crib in the way described, and the plaintiff had nothing to do with that change, and that the plaintiff was not to give notice then when the work should be resumed. This question is a vital question in the case. The plaintiff says that the negligence of the defendant was that the defendant's superintendent gave notice to start the engine and caused the hammer to be raised and to fall without the signal, without the notice which the superintendent should have waited to receive from the plaintiff, and that is all he specifies as negligence in the case. He does not contend that the superintendent was looking down into the crib or ought to have looked down into the crib to see the position of the plaintiff's hand. He told you upon the stand, in substance, that he had no reason to suppose that the superintendent knew where his hand was at the time, but he says it was the invariable practice in doing that work, when the work of driving the pile was suspended, and he had something to do in connection with the pile, loosening it or moving it, that the machine should not be started until he gave notice to the superintendent that it might be started, and he says the failure of the superintendent to wait for such notice, and the act of the superintendent in starting it without notice given by him, caused this injury, and there is nothing else which he specifies as having caused the injury. Now, that is a very narrow question. It is an important question. You must determine it upon the direct evidence in the case, taking into connection everything else which tends to throw light upon that matter. The burden is upon the plaintiff with respect to this matter to show that the superintendent was in fault in this particular, and unless you are satisfied of that there is no case."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*W. G. Bassett*, for the defendant.

*A. L. Green*, for the plaintiff.

BARKER, J. Upon the plaintiff's own testimony and that of the witness called by himself it could be found that he was in the exercise of due care in the prosecution of his work when injured, and that the accident was due solely to the negligence of Bouleau in giving the engineer the order in obedience to

which the latter let the hammer fall, before Bouleau received from the plaintiff the word which was to indicate that the order properly could be given.

It is practically conceded by the defendant's brief that Bouleau's principal duty was that of superintendence, and that it was so could be found from the evidence. Although upon the evidence submitted by the defendant the finding would be that when the plaintiff was hurt there was nothing in his duty which required him to be trying to move the pile, either with his hands or by other means, and that there was nothing to require Bouleau at that stage of the work, to look out for the plaintiff's safety, or to expect any signal or word from the plaintiff before giving the order which released the hammer, and although upon the same evidence it was an absurd contention that the plaintiff was then attempting to move the pile with his hands, it was for the jury to weigh the whole evidence, and determine the real facts. Therefore it was right to submit the case to the jury.

The ruling requested by the defendant and refused under exception : " That if Bouleau did not know, and by the exercise of reasonable care would not have known, that plaintiff's fingers were or would be on the top of the pile, it was not negligence on his part to give the signal to the engineer to start the hammer, and to take the shelf out from under it to let it descend," was one founded upon a partial view only of the evidence, and the evidence upon which it was founded was contradicted. The ruling could be refused rightly in the discretion of the court, if correct instructions covering all aspects of the case as they related to the alleged negligence for which the plaintiff sought to hold the defendant answerable were given in the charge. In our opinion it appears that such instructions were so given.

*Exceptions overruled.*