EDWARD D. LEVINTON *vs.* HARRIS POORVU.

Suffolk. November 5, 1935. — January 30, 1936.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & QUA, JJ.

*Contract,* Of indemnity. *Judgment. Fraud. Res Judicata. Practice, Civil,* Ordering verdict, Exceptions, Amendment.

In an action on a promise to indemnify one against a certain claim, the promisor, though vouched in to defend an action upon such claim against the promisee, and not having done so, might defend upon the ground that the judgment in the original action was obtained by the fraud and collusion of the parties to it.

A judgment might be impeached collaterally by evidence that it was procured by the fraud and collusion of the parties to it, though there also was evidence that the cause of action itself was simulated.

If, without hearing on the merits in a suit in equity, a demurrer to the bill for want of equity was sustained, and the bill without amendment later was dismissed under Rule 85 of the Superior Court (1932) for want of prosecution, the decree of dismissal did not bar the plaintiff from alleging the same facts in defence of an action at law subsequently brought against him by a defendant in the suit.

A plaintiff's motion for a directed verdict in his favor rightly was denied if there was evidence to support a valid defence to the action.

After allowance of a bill of exceptions, the trial judge may allow it to be amended to correct a clerical error.

CONTRACT OR TORT. Writ in the Municipal Court of the City of Boston dated April 28, 1932.

Upon removal to the Superior Court, the action was tried before *Greenhalge*, J. There was a verdict for the defendant. The plaintiff alleged exceptions.

After the allowance of the plaintiff's bill of exceptions, in which were included the plaintiff's second request for ruling and his exception to its refusal, the plaintiff moved to correct the request by substituting the name "Levinton" for the name "Poorvu." The judge made the following order on the motion: "It appearing to me upon inspection of the record that the word 'Poorvu' was inserted in the request by a clerical error for 'Levinton,' I allow the motion, if I have power to do so, subject to the exception of the defendant duly taken." The defendant alleged such exception, and argued in his brief that the allowance of the motion was beyond the power of the judge.

*C. J. Miller*, for the plaintiff.

*J. H. Devine*, (*J. F. Groden* with him,) for the defendant.

CROSBY, J. This action of contract to recover for an alleged breach of an indemnification covenant was tried before a jury and a verdict was returned for the defendant. The case is before this court on the plaintiff's exceptions to the denial of his motion for a directed verdict, to the admission of evidence, to the denial of his requests for instructions to the jury, and also on the defendant's exception to the allowance of a motion to amend one of the plaintiff's requests for rulings.

The writing, dated April 24, 1923, upon which this action was founded, was an agreement for the purchase and sale of real estate, and contained, besides a description of the premises and the terms and conditions of sale, the following provision: "The Vendee hereby represents and declares that no brokers are involved in connection with this transaction and that the said Vendor is not to pay any commis-

sions on account of this sale and agrees to hold the said
Vendor harmless against all claims for commissions." The
agreement was signed by E. Gertrude Furlong, E. D. Levin-
ton, agent, and E. D. Levinton as the vendors, and Harris
Poorvu, the vendee. The sale was consummated.

By a writ dated June 29, 1923, Sidney F. Hooper, a real
estate broker, brought an action against one Max Shoolman
to recover a commission for the sale of the property which
was described in the above mentioned agreement, and
after a trial on the merits Hooper recovered judgment, on
March 14, 1927, in the sum of $6,414.67. An agreement of
judgment satisfied was filed on the same date. By writ
dated March 21, 1928, Shoolman brought an action against
Levinton, the plaintiff in the present action, for the recovery
of the amount of the judgment, together with interest and
attorney's fees, alleging in his declaration that he was acting
as agent for Levinton with respect to the property. The
answer of Levinton consisted of a general denial and a
plea of payment. Under date of April 2, 1928, Levinton
sent Poorvu a letter notifying him to come in and defend
the action. Poorvu received the notice on or about April
6, 1928, but did not appear personally or by attorney.
While the case was pending, Poorvu brought a bill in equity,
filed on June 15, 1928, against Levinton and Shoolman, seek-
ing to restrain the prosecution of the action of Shoolman
against Levinton. Both defendants filed demurrers to the
bill, alleging that the plaintiff had not stated any case which
entitled him to relief in equity. These demurrers were
sustained, according to the order on each demurrer, on the
ground that the allegations in the bill did not show that
the plaintiff in the equity case would be bound by any
judgment obtained by Shoolman against Levinton, or that
the plaintiff had sought and been refused an opportunity
to defend that action. No amendment was filed to the
bill of complaint and a final decree was entered on Septem-
ber 28, 1928, dismissing the bill. The plaintiff Poorvu
appealed. By rescript from this court, dated January 7,
1929, the appeal was dismissed. It appears that the bill
was finally dismissed under Rule 85 of the. Superior Court

(1932). In the action of Shoolman against Levinton, a judgment for the plaintiff was entered on December 21, 1931, in the sum of $9,059.36 including damages and costs. The execution was indorsed "Satisfied in full April 26, 1932," and was filed on January 15, 1935. Levinton, by writ dated April 28, 1932, brought the present action against Poorvu under the indemnity clause contained in the agreement for sale.

The defendant, called by the plaintiff, testified that on or about April 24, 1923, he signed the purchase and sale agreement; that on or about April 6, 1928, he received from counsel for the plaintiff the notice with respect to the action by Shoolman and delivered the notice to his attorney. When one is liable over to another on some claim and is duly notified of the pendency of an action involving such claim, and requested to take upon himself the defence of it, he is no longer a stranger, but is bound by the judgment because he has had the opportunity to appear and defend the action. *Bowditch* v. *E. T. Slattery Co.* 263 Mass. 496, 499. *Genard* v. *Hosmer*, 285 Mass. 259, 265. *Miller* v. *United States Fidelity & Guaranty Co.* 291 Mass. 445, 449. That principle, however, has no application where a judgment was obtained by fraud or collusion. *Valentine* v. *Farnsworth*, 21 Pick. 176, 182. *Boston* v. *Worthington*, 10 Gray, 496, 499. *Prichard* v. *Farrar*, 116 Mass. 213, 220, 221. *New York Central Railroad* v. *William Culkeen & Sons Co.* 249 Mass. 71, 77. *Bowditch* v. *E. T. Slattery Co.* 263 Mass. 496, 498. There was evidence of fraudulent collusion between Shoolman and the plaintiff Levinton. A verdict could not properly have been directed for the plaintiff.

Sidney F. Hooper, called as a witness by the defendant, testified that he acted as a broker in the sale to Poorvu; that Shoolman told him that he had the property to sell and for him to see Levinton for all the details of the property as Levinton was looking out for the property for Shoolman; that Shoolman stated the sale price to be $225,000; that the witness had several talks with Shoolman and Levinton; that Shoolman said that he would be responsible for the

witness's commission; that later the witness produced Poorvu who offered $200,000 for the property, Poorvu to pay the broker's commission, and at that time Shoolman instructed Poorvu to see Levinton, who would prepare the agreements; that in the written agreement the price was stated as $203,333.33; that when Poorvu learned of this he refused to sign the agreement unless he was to be exempt from paying any broker's commission; that Shoolman said it would be all right for Poorvu to sign the agreement, that he, Shoolman, would pay the commission, and "that the indemnity clause agreeing to save Levinton harmless from broker's commissions was there because witness had several co-brokers who might later bring a suit for a commission and as the agreement was between Levinton and Poorvu he wanted to be sure that Levinton was protected and that witness would be paid his broker's commission by him, Shoolman"; that soon after the sale was consummated "witness saw Shoolman at the latter's office and requested payment of his commission and was told by Shoolman that Eddie Levinton did a lot of work in connection with the property and that he ought to receive part of the commission." This witness further testified that he refused to accede to this arrangement, Levinton not having taken any part in producing the purchaser.

The defendant testified that Hooper interested him in the property and that at a conference in Shoolman's office with Hooper, Shoolman, Levinton and one Gilbert, it was agreed that he, the defendant, would pay $200,000 for the property, and also the broker's commission; that Shoolman requested Levinton to draw the agreements; that the witness subsequently refused to sign the agreements when the price was raised, but later signed them after it was decided that Shoolman would pay the commission; that he then gave his check for $5,000 on account of the purchase price payable to Edward D. Levinton, which was later deposited in an account entitled "Edward D. Levinton, Trustee."

Ellen G. Furlong, called by the defendant, testified "That she had been secretary and bookkeeper for Shoolman for several years," and was familiar with his books of account;

that the sale of the Pratt Building was the only instance in which she acted as a "straw" for Levinton; that she had acted for Shoolman as a "straw" in many cases and that she could remember only one piece of property that Shoolman ever had in his own name and that was in Canada; that after the sale to Poorvu, Levinton went to Palestine, "and just prior to his departure she balanced his books and his trustee account on the Merchants National Bank was changed from 'Edward D. Levinton, Trustee' to 'Edward D. Levinton, Max Shoolman, attorney.'"

The plaintiff, called by the defendant, testified that he was a brother-in-law of Shoolman, and that in 1923 he had an office in Shoolman's suite and still has an office there; that the three checks he received from Poorvu in connection with the sale to him were indorsed by the plaintiff, and that the "TR" after his name signified "Trustee"; "that on June 4, 1923, the Poorvu deal was closed"; that on June 15, 1923, he turned over $5,000 to Shoolman, as a loan, and on July 9, 1923, Shoolman paid him $3,300; that at the time Hooper sued Shoolman, the witness was living in Shoolman's home and knew all about the action; that his attorney, who sent the notice to Poorvu to come in and defend the action brought by Shoolman against the witness, represented Shoolman in other matters; that "Up to the time of the sale . . . to Poorvu, Shoolman was not interested directly or indirectly in the property and there was nothing that took place between witness and Shoolman that indicated that he had anything to do with the property or that he had an interest in" it; that he had no conversation with Shoolman about selling the property up to the time the agreement with Poorvu was signed, and that there was no reason that he knew of why Hooper should have brought an action against Shoolman for a commission for a sale of the property to Poorvu; that there was nothing the witness ever said to Shoolman that would indicate to him that Hooper had any claim against Shoolman or the witness for a commission, and that there was nothing brought to the witness's attention to indicate that Shoolman had ever hired Hooper to sell the prop-

erty. This witness then testified that he thought the action by Shoolman against him was "justifiable and equitable." After making this statement the following colloquy took place between the judge and the witness: "Q. (By the judge) I would like to ask a question about this . . . if he had no claim against you, why did you think that the Shoolman suit was justifiable? That is what I would like to know. A. Because, as I tried to show, Shoolman was an innocent party and because of his relationship with me, and also the agreement I had. . . . This was rather a delicate situation because of my rather close relationship with Mr. Shoolman. — Q. Was it your idea that Shoolman had been wrongfully stuck, and if he stuck you, to use the vernacular, you could pass it on to Poorvu? Was that the situation? A. I didn't have any other way of taking care of it, except through my agreement which I had drawn up. — Q. That is, you mean, taking care of Shoolman? A. Of his bringing suit against me — the only way that we could bring it to a head, or to find out if I was right or wrong in the case. I had no other way of establishing my rights except through that medium." This witness further testified "that from the checking account in the Merchants National Bank which was changed over from Edward D. Levinton, Trustee to Max Shoolman, Attorney for Levinton," after the latter left for Palestine, there were checks drawn to Max Shoolman and that while the witness was away Shoolman was lending himself money from the witness's funds.

If the jury believed the plaintiff's testimony that he, and not Shoolman, owned the property, they were warranted in finding collusion between Levinton and Shoolman in the procurement of the judgment against Levinton. Levinton testified that Shoolman was an innocent party, that because of the close relationship existing between them, and the fact that Levinton had the agreement of indemnity with Poorvu, it was decided that Shoolman's loss was to be taken care of through the medium of the indemnity agreement and transferred to Poorvu. Levinton testified that for Shoolman to sue him was "the only way that we could

bring it to a head" — that is, to take care of Shoolman. The plaintiff's contention that the fraud, if there was any, was in simulating a claim and not fraud and collusion in the procurement of a judgment, which the plaintiff concedes would constitute a bar to the present action, cannot be sustained.

The defendant was not barred from setting up fraud and collusion as a defence in the present action by the disposition of the equity proceedings in which he was the plaintiff and Levinton and Shoolman were the defendants. The plaintiff, however, contends that, although ordinarily a decree dismissing a bill in equity under Rule 85 of the Superior Court (1932) may not be a final adjudication such as would prevent a new suit upon the same cause of action, in the case of Poorvu against Shoolman and Levinton, as the demurrers were sustained and leave to amend the bill was not availed of, the decree dismissing the bill was an adjudication on the merits. It is plain that there was not an adjudication on the merits in the equity proceeding. The sole ground of the demurrers in that suit was that the plaintiff had not stated any cause which entitled him to relief in equity. The demurrers were sustained and a final decree dismissing the bill was entered pursuant thereto. In this situation there was no adjudication upon the merits which would be a bar to defence of the action at law. The dismissal of the bill because equitable relief is refused is not a bar to a subsequent action at law. *Newburyport Institution for Savings* v. *Puffer*, 201 Mass. 41, 49. Following the dismissal of the appeal from the final decree, the bill was dismissed under Rule 85 for failure of prosecution. As was stated in *Farnum* v. *Brady*, 269 Mass. 53, 55: "*Res judicata* is not a defence unless a judgment has been rendered on the merits. ' . . . a cause of action once finally determined, without appeal, between the parties, on the merits, by any competent tribunal, cannot afterwards be litigated by new proceedings either before the same or any other tribunal. But no such effect is attributable to a decree dismissing a bill for want of jurisdiction, failure of prosecution, want of parties, or any other cause

not involving the essential merits of the controversy.'"
See also *Wight* v. *Wight,* 272 Mass. 154. The decree dis-
missing the bill was not converted into an adjudication
upon the merits by reason of the fact that leave to amend
the bill was not availed of following the sustaining of the
demurrers. There is nothing to the contrary in *Correia* v.
*Portuguese Fraternity,* 218 Mass. 305; *Capaccio* v. *Merrill,*
222 Mass. 308; *Keown* v. *Keown,* 231 Mass. 404; *Cheraska*
v. *Ohanasian,* 259 Mass. 341, relied upon by the plaintiff.

The plaintiff's exception to the admission of evidence
of fraud and collusion is without merit. There was no error
in the denial of the plaintiff's requests for instructions. If
it be assumed in favor of the plaintiff that there was no error
in the allowance of the plaintiff's motion to amend request
2 by striking out the name "Poorvu" and substituting the
name "Levinton," to which the defendant took an excep-
tion, the request was, nevertheless, properly refused. This
request was founded upon a partial view of the evidence.
The element of fraud and collusion was ignored. A request
for an instruction is erroneous which ignores material evi-
dence in the case. *Murray* v. *Rivers,* 174 Mass. 46, 54.
*Dolphin* v. *Plumley,* 175 Mass. 304, 307. *Tashjian* v.
*Worcester Consolidated Street Railway,* 177 Mass. 75, 80.
Requests 3 and 4 stand on the same footing and were
properly denied. Request 5 erroneously proceeded upon
the assumption that the issue of fraud and collusion was
barred by the suit in equity. Request 7, to the effect that
the defendant had failed to sustain the allegation of fraud
and collusion, has hereinbefore been dealt with. The plain-
tiff excepted to that portion of the charge in which the
judge said in substance that if Levinton and Shoolman
were working together to transfer the loss from Shoolman
to Poorvu, or the obligation to pay it, there could be no
recovery because there would be fraud and collusion. The
plaintiff contends that the evidence of fraud and collusion
was inadmissible. This contention likewise has been pre-
viously dealt with and need not be further discussed. It
is without merit.

It follows from what has been stated that the defendant

was not bound by the judgment obtained by Shoolman against Levinton; he could attack it collaterally on grounds of fraud and conspiracy. The defendant was not barred from setting up an equitable defence in this action by the sustaining of the demurrers in the equity case in which he was the plaintiff and Levinton and Shoolman were the defendants. Upon the evidence the defendant could be found to have proved the allegations of fraud, collusion and conspiracy.

We need not refer further to the exceptions to the admission of evidence, to the instructions of the judge to the jury, or to the denial of the requests of the plaintiff. None of these exceptions can properly be sustained. There was no error in the denial of the plaintiff's motion for a directed verdict in his favor. The case was properly submitted to the jury.

The defendant's exception to the granting of the plaintiff's motion to correct the bill of exceptions by striking out the name "Poorvu" in request 2 and substituting therefor the name "Levinton," so that the action may be described as Shoolman v. Levinton, must be overruled. The purpose of the motion was merely to correct a clerical error.

As no error of law appears in the conduct of the trial the entries will be

*Plaintiff's exceptions overruled.*
*Defendant's exceptions overruled.*