# United States Court of Appeals

## For the First Circuit

No. 06-1937

IN RE: SONUS NETWORKS, INC,
Shareholder Derivative Litigation

MICHAEL PISNOY; MICHELLE BURKE,
Derivatively on behalf of Sonus
Networks, Inc., a Delaware
Corporation; DANIEL WILLIAMS,

Plaintiffs-Appellants,

v.

HASSAN M. AHMED; STEPHEN J. NILL;
EDWARD T. ANDERSON; PAUL J. FERRI;
PAUL J. SEVERINO; SONUS NETWORKS,
INC.; ALBERT A. NOTINI; J. MICHAEL
O'HARA; EDWARD N. HARRIS; PAUL R.
JONES; RUBIN GRUBER,

Defendants-Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Torruella, Circuit Judge,

John R. Gibson, Senior Circuit Judge[*]

and Lipez, Circuit Judge.

---

[*]Of the United States Court of Appeals for the Eighth Circuit,
sitting by designation.

Willem F. Jonckheer, with whom Robert C. Schubert, Juden Justice Reed, Schubert & Reed LLP, Douglas M. Brooks, John Martland, and Gilman and Pastor, LLP, were on brief for appellants.

Daniel W. Halston, with whom Jeffrey B. Rudman, Peter A. Spaeth, Melissa B. Coffey, Wilmer Cutler Pickering Hale And Dorr LLP, Thomas J. Dougherty, Matthew J. Matule, Skadden, Arps, Slate, Meagher & Flom LLP, Robert S. Frank, Jr., John R. Baraniak, Jr., Choate Hall & Stewart LLP, and John D. Hughes, Edwards Angell Palmer & Dodge LLP, were on brief for appellees.

---

August 16, 2007

---

**JOHN R. GIBSON**, **Circuit Judge**. Michael Pisnoy, Michelle Burke, and Daniel Williams, suing derivatively on behalf of Sonus Networks, Inc., appeal from the district court's order dismissing their suit on the basis of issue preclusion. In re Sonus Networks, Inc., S'holder Derivative Litig., 422 F. Supp. 2d 281 (D. Mass. 2006). They contend that the dismissal of an earlier derivative suit in Massachusetts state court for failure to plead either demand on the Sonus board of directors or the futility of such a demand should not bar this suit because the federal plaintiffs are not in privity with the state plaintiffs, the issue litigated in the state action was not identical to the issue presented here, and the state court dismissal was not "on the merits." We affirm.

## I.

Sonus Networks, Inc., is a Delaware corporation headquartered in Massachusetts, which is in the business of providing equipment and software that permits speech to be transmitted in "packets" over the internet. On January 20, 2004, Sonus announced that it would postpone announcing its fourth quarter 2003 and 2003 fiscal year financial results pending completion of the 2003 audit. On February 11, 2004, Sonus announced that it had discovered that actions of certain non-executive employees might have improperly affected the timing of revenue recognition and thus could put into question the accuracy of Sonus's financial statements for 2003 and possibly earlier

periods.  The announcement stated that Sonus had responded to the discovery by terminating the employees implicated, launching an internal review as well as an investigation by the audit committee of the board of directors, and notifying the Securities Exchange Commission.

Within days of the announcement, shareholders had filed derivative lawsuits against officers and directors[1] of Sonus in Massachusetts state court (February 20, 2004), while different shareholders filed similar suits in the federal court[2] for the District of Massachusetts, where suits filed February 23, February 26, and March 24, 2004, were consolidated.  422 F. Supp. 2d at 285.

The state court complaint alleged that the defendants were guilty of breach of fiduciary duties to the corporation. According to the state complaint, as of January 20, 2004, Sonus's stock had increased by 800% in a year and was trading at $9.91 per share, fueled by optimistic press releases from Sonus regarding its future profitability.  The complaint alleged that after the announcement on February 11, 2004, Sonus had "identified certain issues, practices and actions of certain employees" that could

_____

[1]The state complaint in the record before us named as defendants Directors Hassan M. Ahmed, Rubin Gruber, Edward T. Anderson, Paul J. Ferri, Albert A. Notini, and Paul J. Severino, and officers Edward N. Harris, J. Michael O'Hara, Paul R. Jones, and Stephen J. Nill.

[2]The federal suits named as defendants directors Ahmed, Gruber, Anderson, Ferri, Notini, and Severino, as well as officers Harris, O'Hara, Jones, and Nill.

-4-

affect the accuracy of its 2003 financials and possibly the financials from earlier periods, the company's stock fell by 46%. The state complaint said that the financials had "materially overstate[d]" earnings and that the 2003 financials would have to be restated "to remove millions in improperly reported revenues." The complaint quoted a news article that implied there was reason to think there had been a leak of information the day of the announcement because Sonus's stock began falling at 11:00 a.m. on February 11, although the bad news was not announced until the close of business.  The state complaint listed officers and one director who had sold Sonus stock at different points in 2003, including director Anderson's sale of $448,918.34 worth of stock on October 18, 2003, but the complaint made no particular allegation that anyone traded before the announcement on February 11, 2004. The complaint alleged that Sonus was injured by the loss in value resulting from public distrust of the company's financial reports, exposure to liability and litigation costs in fraud lawsuits, and the costs of investigation.

The state plaintiffs pled that they had not made demand on Sonus's board of directors to file suit on behalf of the corporation before the plaintiffs filed their derivative suit because such a demand would have been futile in light of the fact that the complaint named all of the six directors as defendants and

so the directors would have had to sue themselves.[3]  The plaintiffs also alleged that each of the directors had participated in wrongdoing because each "knew" of the accounting problems, and Anderson sold stock while he knew of the problems but before Sonus had announced them publicly.  Moreover, the directors were alleged to lack independence from each other by virtue of the facts that two of them (Ahmed and Gruber) worked for Sonus as their principal occupation and two of them (Ferri and Severino) were on the compensation committee.  Further, three of the defendants (Anderson, Ferri, and Severino) served on the audit committee and so were alleged to be financially interested in avoiding liability for their failures of oversight.  Four of the six directors sued were "outside" directors.

Notably absent from the complaint was any indication of what the final results of the internal, audit committee or SEC investigations were, what the effect of the alleged irregularities would be on financial statements for any year, and whether there had been any judicial or administrative finding of wrongdoing by any of the defendants--absences which are not surprising, considering the complaint was filed within nine days of Sonus's February 11, 2004, announcement, apparently on the theory that the race is to the swift.

_____

[3]The state court took notice that there were seven directors. Thus, all but one of the directors were named as defendants.

-6-

The state court dismissed the state suits on September 27, 2004, for failure to comply with Mass. R. Civ. P. 23.1, which requires a shareholder in a derivative action to "allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and . . . the reasons for his failure to obtain the action or for not making the effort." In re Sonus Networks, Inc. Derivative Litig., No. 04-0753 BLS (Mass. Super. Ct. Sept. 27, 2004). The state court held that the complaint before it did not allege a specific wrongful act by the defendants, but rather a failure of supervision over the financial statements. The court held that the state plaintiffs had not pleaded facts that would raise a reasonable doubt that a majority of the directors had a financial interest that would prevent them from fairly considering a demand or that they lacked the independence necessary to consider such a demand. The court dismissed the complaint without leave to amend. The state plaintiffs appealed, but later withdrew their appeal "[in] light of the Securities and Exchange Commission's action as reported in Sonus's Form 8-K, dated June 9, 2005," as they said in their motion to withdraw the appeal.

In the meanwhile, the plaintiffs in the consolidated federal cases filed a Second Amended Consolidated Complaint of some seventy pages on July 1, 2005. The Second Amended Complaint included substantially all the allegations made in the state

complaint, plus some allegations regarding events that had taken place before the state suit was filed or while it was pending, but which had not been included in the state complaint, and some allegations regarding events that occurred after the state suit was dismissed.

The events antedating the filing of the suits were statements in Sonus's SEC filings in 2001 and 2002 reporting in the same language for both years that the company's growth was placing a "significant strain" on the Company's systems and that the company would need to "continue to improve our financial, managerial and manufacturing controls and reporting systems." Additionally, the plaintiffs alleged that Sonus had been sued on March 3, 2003, in securities class action complaints alleging the company's financial statements were overstated in 2001. Notably, the Second Amended Complaint did not allege that the plaintiffs in the securities case had prevailed.

Events alleged to have occurred during the pendency of the state suits were:
(1) On March 29, 2004, Sonus announced it was considering expanding the previously announced internal investigation to include additional prior periods, and
(2) On July 28, 2004, Sonus restated its financial results for 2001, 2002, and the first three quarters of 2003. The effect of the restatements was to reduce the net loss reported in 2001 from

$645.4 million to $635.6 million and to increase the net losses reported in 2002 and the first three quarters of 2003 from $68.5 million and $6.4 million, respectively, to $73.8 million and $22 million. Sonus also announced on that date that Stephen J. Nill, formerly Sonus's chief financial officer, had resigned at the request of the company. On the same day, Sonus filed a Form 10-K/A that disclosed that Sonus's internal investigation had "identified material weaknesses in our internal controls and procedures, as they existed as of December 31, 2003," and listed nine types of such weaknesses.

Finally, the Second Amended Complaint alleged that after the state suit had been dismissed, Sonus filed a Form 10-K for 2004 dated March 15, 2005, which elaborated on the list of material accounting weaknesses listed in its previous Form 10-K/A listing and detailing ten types of internal control weaknesses that had been identified by Sonus's internal investigation.

Like the state court suit, the federal complaint alleged that the plaintiffs had not made demand on the board of directors before bringing suit because it would have been futile to do so. Regarding independence of the directors, the Second Amended Complaint alleged that the six directors named as defendants were a majority of the directors. It alleged that Anderson and Ferri had been described in the press as "like school pals" and a "tag-team" because they had frequently invested in the same companies

and that Ahmed, Gruber, and Severino "have a history of interlocking business relationships among each other and [with] Ferri and Anderson." The complaint added that Ahmed had been promoted to Chairman of the Board in 2004 despite the results of the internal investigation and that both he and Gruber had been awarded incentive compensation based on inflated financial results for 2003.

The defendants moved to dismiss the Second Amended Complaint on the ground that the dismissal in the state suit barred the federal suit as well. The district court granted the motion, holding that the plaintiffs were barred by issue preclusion from relitigating the question of whether it would have been futile under Delaware law in February and March 2004 to demand that the Sonus board bring suit on behalf of the corporation based on the accounting deficiencies alleged. In re Sonus Networks, Inc., 422 F. Supp. 2d at 293-94.

## II.

Res judicata is an affirmative defense, Rodriguez v. Baldrich, 628 F.2d 691, 692 n.2 (1st Cir. 1980), but where, as here, the defendant has raised the question on motion to dismiss, the plaintiff does not object to the procedure, and the court discerns no prejudice, the issue may be resolved on such a motion, id. The applicability of the doctrine of res judicata on undisputed facts presents a question of law over which we exercise

plenary review.  <u>Pérez-Guzman</u> v. <u>Gracia</u>, 346 F.3d 229, 233 (1st Cir. 2003).

Under the full faith and credit statute, 28 U.S.C. § 1738, a judgment rendered in a state court is entitled to the same preclusive effect in federal court as it would be given within the state in which it was rendered.  <u>Migra</u> v. <u>Warren City Sch. Dist. Bd. of Educ.</u>, 465 U.S. 75, 81 (1984).  Thus, the preclusive effect of the state court judgment at issue here is determined under Massachusetts law.

Massachusetts recognizes two kinds of res judicata, claim preclusion and issue preclusion.  <u>Kobrin</u> v. <u>Bd. of Registration in Med.</u>, 832 N.E.2d 628, 634 (Mass. 2005).  As the names suggest, claim preclusion operates on the level of the claim, and issue preclusion operates on the level of the issue.  Claim preclusion is based on the idea that the precluded litigant had the opportunity and incentive to fully litigate the claim in an earlier action, so that all matters that were or could have been adjudicated in the earlier action on the claim are considered to have been finally settled by the first judgment.  <u>Id.</u>  In contrast, issue preclusion does not reach issues unless they were actually litigated and decided in the first litigation, <u>id.</u>; however, it bars relitigation of those issues even in the context of a suit based on an entirely different claim.  <u>Id.</u>

Massachusetts applies the doctrine of issue preclusion in

a traditional manner, <u>Keystone Shipping Co.</u> v. <u>New England Power Co.</u>, 109 F.3d 46, 51 (1st Cir. 1997). The Massachusetts courts use several formulations interchangeably to describe the prerequisites for issue preclusion, <u>see</u> <u>infra</u> pp. 12-14, but the Supreme Judicial Court recently stated that issue preclusion applies when

> (1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication. Additionally the issue decided in the prior adjudication must have been essential to the earlier judgment.

<u>Kobrin</u>, 832 N.E.2d at 634 (internal citations omitted). Massachusetts courts also require that appellate review must have been available in the earlier case before issue preclusion will arise. <u>Sena</u> v. <u>Commonwealth</u>, 629 N.E.2d 986, 992 (Mass. 1994).

The plaintiffs contend that three elements necessary for issue preclusion are lacking in this case: privity, identity of issues, and a judgment "on the merits." We will address these points in reverse order.

### A. "On the Merits"

We ask first whether the state court judgment was "on the merits" in the sense required to achieve preclusive effect. It is not entirely clear to what extent the phrase "on the merits" functions as a separate prerequisite for issue preclusion under Massachusetts law. The Massachusetts courts use a variety of tests to establish whether issue preclusion is proper, and not all the

-12-

tests include the phrase "on the merits." For instance, in one case, Martin v. Ring, 514 N.E.2d 663, 664-65 (Mass. 1987), the Massachusetts Supreme Judicial Court recited several different formulations, including one relying on the Restatement (Second) of Judgments § 27 (1982), and one drawn from California law. The formulation drawn from the Restatement (Second) says that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." 514 N.E.2d at 664 (quoting Fireside Motors, Inc. v. Nissan Motor Corp., 479 N.E.2d 1386, 1390 (Mass. 1985) (quoting Restatement (Second) § 27)); see Commonwealth v. Rodriguez, 823 N.E.2d 1256, 1259-60 (Mass. 2005); Johnson v. Mahoney, 424 F.3d 83, 93 (1st Cir. 2005) ("Massachusetts courts apply the doctrine of collateral estoppel as it has been described in the Restatement (Second) of Judgments (1982)."). The test drawn from California law asks three questions: "Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?" Ring, 514 N.E.2d at 665 (quoting Mass. Prop. Ins. Underwriting Ass'n v. Norrington, 481 N.E.2d 1364, 1366 (Mass. 1985) (quoting Bernhard v. Bank of America Nat'l Trust & Sav.

-13-

<u>Ass'n</u>, 122 P.2d 892 (Cal. 1942))).

As can be seen from the formulations above, the requirement that the prior judgment be "on the merits" was omitted from the <u>Restatement (Second)</u>, which has been quoted and relied on by Massachusetts courts, even as they have continued to reiterate "on the merits" as a requirement for issue preclusion. The <u>Restatement</u>, discussing claim preclusion rather than issue preclusion, explains that the phrase "on the merits" has traditionally been used to describe the kind of judgments that should bar later claims: "The prototype case [for claim preclusion] continues to be one in which the merits of the claim are in fact adjudicated against the plaintiff after trial." <u>Restatement (Second)</u> § 19, cmt. a. However, the comment explains that the trend in the law is that "judgments not passing directly on the substance of the claim have come to operate as a bar." <u>Id.</u> Because reaching the "merits" of the claim is no longer determinative of whether the claim should be precluded, the drafters of the <u>Restatement</u> eschewed the use of that term. <u>Id.</u>

Just as claim preclusion may result from a determination that does not reach the substance of a claim, some determinations may reach the "merits" of a particular issue, but bar only relitigation of that particular issue, rather than the whole claim. Professors Wright, Miller, and Cooper explain:

> It is commonly said that preclusion can rest only on a judgment that is valid, final, and on the merits. The

-14-

phrase "on the merits" has been used of a long time, and is continued today both in judicial usage and the language of Civil Rule 41. It is an unfortunate phrase, which could easily distract attention from the fundamental characteristics that entitle a judgment to greater or lesser preclusive effects. The characteristics that determine the extent of preclusion may have little to do with actual resolution of the merits, although the paradigm will always be a judgment entered after full trial of all disputed matters. Thus it is clear that an entire claim may be precluded by a judgment that does not rest on any examination whatever of the substantive rights asserted. On the other hand, further litigation of particular issues may be precluded by judgments that do not bar further litigation on the underlying claim. The only virtue that redeems the "on-the-merits" phrase from oblivion is its service as a shorthand reminder that the extent of preclusion is measured by factors beyond validity and finality [of the judgment.]

18A Charles A. Wright et al., Federal Practice & Procedure § 4435 (2d ed. 2002) (footnotes omitted).

These doubts about the utility of the phrase "on the merits" are not mere academic rumination, but were part of the analysis in Semtek International Inc. v. Lockheed Martin Corp., 531 U.S. 497, 501-03 (2001), where the Supreme Court held that even if dismissal of a federal diversity suit is "on the merits" within the meaning of Federal Rule of Civil Procedure 41(b),[4] it does not necessarily follow that the judgment is entitled to claim-preclusive

_____

[4]Fed. R. Civ. P. 41(b) provides: "Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits."

effect.[5]  Instead, the Court held that the "primary meaning" of the language of Rule 41(b) is to define the effect of a dismissal on subsequent attempts to revive the same action that was dismissed, rather than its effect on cases filed in other jurisdictions.  Id. at 505-06.

We certainly are in no position to excise the phrase "on the merits" from the Massachusetts law of issue preclusion, but neither do we credit the plaintiffs' arguments here that this phrase poses an obstacle to according any preclusive effect to the Massachusetts state court's dismissal.  Whatever confusion may attend the phrase "on the merits" in the claim preclusion context, it can be understood in the issue preclusion context to be part of the requirement that there be a final judgment.  See Kobrin, 832 N.E.2d at 634 (finality and on the merits listed as one element).

---

[5]The Supreme Court rejected the argument that a judgment that was "on the merits" within the meaning of Rule 41(b) necessarily precluded a later suit:

Implicit in this reasoning is the unstated minor premise that all judgments denominated "on the merits" are entitled to claim-preclusive effect.  That premise is not necessarily valid.  The original connotation of an "on the merits" adjudication is one that actually "pass[es] directly on the substance of [a particular claim] before the court. . . .
But over the years the meaning of the term "judgment on the merits" "has gradually undergone change," and it has come to be applied to some judgments  (such as the one involved here) that do not pass upon the substantive merits of a claim and hence do not (in many jurisdictions) entail claim-preclusive effect.

531 U.S. at 501-02 (citations omitted).

Although there are Massachusetts cases stating that "'no [preclusive] effect can be attributed to a decree dismissing a bill or petition in equity, for want of jurisdiction or any other cause not involving the essential merits of the controversy,'" Springfield Pres. Trust, Inc. v. Springfield Library & Museums Ass'n, Inc., 852 N.E.2d 83, 91 (Mass. 2006) (quoting Curley v. Curley, 40 N.E.2d 272, 274 (Mass. 1942)), such cases are either refusing to apply claim preclusion or holding that the issue decided in the earlier case was not identical with the issue posed in the later case. See, e.g., Springfield Pres. Trust, 852 N.E.2d at 91; Levinton v. Poorvu, 200 N.E. 9, 12 (Mass. 1936); Conley v. Fenelon, 174 N.E. 237, 238 (Mass. 1931). In contrast, in Sadler v. Indus. Trust Co., 97 N.E.2d 169, 171 (Mass. 1951), supplemented, 97 N.E.2d 171 (Mass. 1951), the court applied preclusive effect to an earlier dismissal for failure to join an indispensable party, where the plaintiff had brought a second suit without joining the indispensable party. Failure to join an indispensable party is expressly listed in Massachusetts Rule 41(b)(3) as one of the grounds that is not "on the merits." Thus, Sadler is consistent with the accepted modern view that issue preclusion does not depend on an earlier adjudication of the substance of the underlying claim; even adjudications such as dismissal for lack of jurisdiction or failure to join an indispensable party, which are expressly denominated by Rule 41(b) as not being "on the merits," are entitled to issue preclusive

-17-

effect.  See, e.g., Muñiz Cortes v. Intermedics, Inc., 229 F.3d 12, 14 (1st Cir. 2000) (dismissal for lack of subject matter jurisdiction); Brereton v. Bountiful City Corp., 434 F.3d 1213, 1218-19 (10th Cir. 2006) (dismissal for lack of standing); Perry v. Sheahan, 222 F.3d 309, 318 (7th Cir. 2000)(dismissal for lack of standing); Kasap v. Folger Nolan Fleming & Douglas, Inc., 166 F.3d 1243, 1248 (D.C. Cir. 1999) (dismissal for lack of subject matter jurisdiction); Okoro v. Bohman, 164 F.3d 1059, 1062-64 (7th Cir. 1999) (dismissal of forma pauperis suit as frivolous); 18A Federal Practice & Procedure § 4436.

We need not belabor the abstract question of what "on the merits" means in modern issue preclusion law because we have in this Circuit clear guidance on how to treat the very situation presented here–dismissal of a derivative suit for failure to adequately plead a demand or futility of a demand.  In In re Kauffman Mutual Fund Actions, 479 F.2d 257 (1st Cir. 1973), we affirmed the dismissal of a derivative suit for failure to plead with particularity facts that would excuse demand on the board of directors, but we qualified the affirmance in one respect: the district court had denominated the dismissal as "without prejudice," but we held that this characterization was not entirely correct.

> This must mean without prejudice as to the substantive
> cause of action.  The dismissal is without prejudice as
> to the substantive cause of action.  The dismissal is
> with prejudice on the issue of the obligation to make a
> demand on the directors with respect to that substantive
> complaint.  The principle applies that "[a]lthough, where

-18-

> a judgment for the defendant is not on the merits, the plaintiff is not precluded from maintaining a new action on the same cause of action, <u>he is precluded from relitigating the very question which was litigated</u> in the prior action." Restatement of Judgments § 49, comment b, at 195 (1942).

<u>Id.</u> at 267 (emphasis added). <u>Kauffman</u> confirms the generally accepted principle that dismissal for failure to satisfy a precondition to suit precludes relitigation of the very same issues actually decided in the first litigation. <u>See</u> <u>Saez Rivera</u> v. <u>Nissan Mfg. Co.</u>, 788 F.2d 819, 821 (1st Cir. 1986) (per curiam) (dismissal for failure to effect service of process barred second suit based on same attempt at service); <u>see generally</u> 18A <u>Federal Practice & Procedure</u> § 4437. <u>But see</u> <u>Kaplan</u> v. <u>Bennett</u>, 465 F. Supp. 555, 561-62 (S.D.N.Y. 1979) (holding that dismissal based on failure to satisfy "procedural requirement" of pleading demand futility is "not to be given preclusive effect"). <u>Kauffman</u> leads us to conclude that the state dismissal was "on the merits" on the issue of whether it would have been futile to demand the Sonus board to sue themselves on behalf of the corporation.

On the other hand, the defendants' argument that the dismissal for failure to plead demand is barred because it was "on the merits" under Massachusetts Rule of Civil Procedure 41 and Federal Rule of Civil Procedure 41 would take us beyond issue preclusion to a claim preclusion theory, which would be

-19-

inappropriate for this case.[6]  The defendants contend that a dismissal for failure to plead compliance with Massachusetts Rule of Civil Procedure 23.1 should be governed by the rules for dismissal for failure to state a claim, which is accorded claim-preclusive effect, see Mestek, Inc. v. United Pac. Ins. Co., 667 N.E.2d 292, 294 (Mass. App. Ct. 1996); Isaac v. Schwartz, 706 F.2d 15, 17 (1st Cir. 1983) (gauging effect of dismissal of Massachusetts state action).

In particular, the defendants rely on Bazata v. National Insurance Co. of Washington, 400 A.2d 313 (D.C. 1979), in which claim preclusion was applied to a dismissal for failure to plead demand.  There, a plaintiff's first derivative suit was dismissed for failure to make demand, but the plaintiff later made demand and refiled.  Id. at 314.  Despite the plaintiff's satisfaction of the demand requirement, the D.C. Court of Appeals held that the first case had been dismissed on the merits, because the questions of

---

[6]We do not mean to say that establishing adjudication on the merits under Federal Rule 41 always establishes adjudication on the merits for purposes of claim preclusion.  The Supreme Court held in Semtek that the import of Federal Rule 41 is not to prescribe res judicata principles, but to determine when the same suit may be refiled in the same court.  531 U.S. at 506.  However, Rule 41 and claim preclusion doctrine are often applied interchangeably, as in the defendants' argument.  See, e.g., Isaac, 706 F.2d at 17 ("Under Massachusetts law, as elsewhere, a dismissal for failure to state a claim, under Mass. R. Civ. P. 12(b)(6), operates as a dimsissal on the merits, see Mass R. Civ. P. 41(b)(3), with res judicata effect."); see also Semtek, 531 U.S. at 505 (conceding that whether a dismissal is with or without prejudice under Rule 41 will "ordinarily (though not always)" determine res judicata question).

-20-

demand and futility involve substantive assessments of whether the directors breached their duties. Id. at 315-16. Bazata therefore affirmed the trial court's dismissal of the second suit on the ground of "res judicata" (i.e., claim preclusion).[7] Id. at 314-16.

The law has evolved on the question of whether a judgment on the pleadings merely resolves the adequacy of the particular pleadings or whether it also bars the underlying claims. The older view was that a dismissal for inadequate pleading did not preclude a later suit that properly pleaded a cause of action: "Normally, a judgment for a defendant founded on a demurrer is not a bar to a subsequent action because 'such a judgment commonly is based not on the merits but upon the insufficiency of the statement of the cause of action.'" Spector v. Loreck, 175 N.E.2d 262, 263 (Mass. 1961). The modern view, which prevails in Massachusetts, is that a party should be held to account not only for what he actually pleaded, but for what he could have pleaded in the earlier suit. Mestek, 667 N.E.2d at 294; Isaac, 706 F.2d at 17 (applying Massachusetts law); see generally 18A Federal Practice & Procedure § 4439, at 194-97 (explaining that the change results from the liberalization of rules of pleading and the ease of amendment, together with the perceived burden on the defendant from having to respond to serial complaints,

---

[7]Bazata was expressly rejected in an Alabama state case, which held that failure to satisfy the demand requirement in a derivative case did not result in claim preclusion or an adjudication on the merits under the state analog to Rule 41 Ex Parte Capstone Dev. Corp., 779 So.2d 1216, 1219 (Ala. 2000).

which make it fair to hold plaintiff to his pleading).

While dismissal of a derivative suit for failure to plead demand or excuse is of course a type of dismissal for inadequate pleadings, it is also a dismissal for failure to accomplish a precondition, which is a failure that may be remedied by the time the second suit is filed. The Supreme Court's decision in Costello v. United States, 365 U.S. 265, 285-88 (1961), confirmed that dismissal for failure to satisfy a precondition to suit should not bar a subsequent suit in which the defect has been cured. Accord Lebrón-Ríos v. U.S. Marshal Serv., 341 F.3d 7, 13 (1st Cir. 2003) (dismissal of suit for failure to exhaust administrative remedies would not preclude later suit if plaintiffs exhausted remedies); Saylor v. Lindsley, 391 F.2d 965, 968-69 (2d Cir. 1968) (dismissal of derivative suit for failure to post bond did not bar subsequent suit on same claim if bond posted); Restatement (Second) of Judgments § 20(2) ("A valid and final personal judgment for the defendant, which rests on the prematurity of the action or on the plaintiff's failure to satisfy a precondition to suit, does not bar another action by the plaintiff instituted after the claim has matured, or the precondition has been satisfied, unless a second action is precluded by operation of the substantive law."). We acted consistently with this principle in González Turul v. Rogatol Distributors, Inc., 951 F.2d 1 (1st Cir. 1991). There, we reversed a judgment after trial in a derivative suit because the plaintiff

-22-

had not alleged in the complaint either that she had made demand on the directors or that demand would have been futile, id. at 1; however, we dismissed the complaint "without prejudice," id. at 3, with the implication that suit could be refiled if the plaintiff complied with Rule 23.1. Thus, the parties' respective rights may have altered over the course of time between the two suits, which may make preclusion inappropriate. See DeCosta v. Viacom Int'l, Inc., 981 F.2d 602, 610-11 (1st Cir. 1992). We therefore conclude that dismissal for failure to plead demand under Rule 23.1 is not entirely analogous to dismissal for failure to state a claim. We do not believe that applying claim preclusion to a dismissal for failure to plead satisfaction of a precondition to suit is compatible with the principle of Costello or the holdings in cases like LeBrón-Ríos that failures to satisfy preconditions generally[8] can be cured.

The defendants contend that the dismissal was on the merits in the sense of reaching a substantive issue, citing Kamen v. Kemper Financial Services, Inc., 500 U.S. 90, 96-97 (1991), which stated that the demand requirement is substantive, not procedural. The preclusive effect of a dismissal for failure to comply with a

_____

[8]There may be exceptions to the general rule, such as when the plaintiff's failure to satisfy a precondition before bringing the first suit prejudices the defendants, making claim preclusion appropriate. See Stebbins v. Nationwide Mut. Ins. Co., 528 F.2d 934, 937 (4th Cir. 1975)(per curiam). See also Restatement (Second)of Judgments § 20, cmt. n.

-23-

precondition to suit does not depend on whether the precondition is "substantive" or "procedural," but on whether the plaintiff has satisfied the precondition between the dismissal of the first suit and the filing of the second. See 18A Federal Practice & Procedure § 4437, at 184-85 ("Dismissal for failure to satisfy a procedural precondition should be treated in the same way as dismissal for failure to satisfy substantive preconditions. The dismissal is not an adjudication on the merits that would bar assertion of the same claim after satisfying the precondition . . . but it should preclude relitigation of the same precondition issue.").

In sum, we hold that the Massachusetts state court judgment was "on the merits" in the sense that it is entitled to issue-preclusive effect, but we reject the defendants' argument that the Rule 23.1 dismissal was "on the merits" in the sense that no further suit could be brought on the same claim.

## B. Identity of Issues

Issue preclusion prevents relitigation of the same issues actually adjudicated in an earlier judgment. Kobrin, 832 N.E.2d at 634; Comm'r of Dept. of Employment & Training v. Dugan, 697 N.E.2d 533, 537 (Mass. 1998) (even if there is not complete identity between the issues, issue preclusion may be appropriate where the issues overlap substantially). The plaintiffs contend that their complaint differs so significantly from the state complaint that the state court's decision was not on the identical issue that we would

face in deciding whether to dismiss for failure to plead futility. The question is whether there is anything in the Second Amended Complaint here that amounts to a "significant change" in the futility issue from what was presented to the state court. See DeCosta v. Viacom Int'l, Inc., 981 F.2d 602, 605 (1st Cir. 1992); Pignons S.A. de Mecanique v. Polaroid Corp., 701 F.2d 1, 2 (1st Cir. 1983) (looking for material difference in facts); see also Bansbach v. Zinn, 801 N.E.2d 395, 401-02 (N.Y. 2003) (no identity of demand futility issues in two derivative suits based on different transactions).

The plaintiffs' threshold difficulty is that the vast majority of their allegations are not "new" since the state complaint was dismissed, but only "different." By that we mean that the evidence was available and could have been brought before the state court before it dismissed the state action. Our rationale for distinguishing dismissal for failure to comply with the demand and futility pleading requirements from dismissal for failure to state a claim is that the existence vel non of a precondition is dynamic and may change. This is a rationale for allowing a plaintiff (or his privies) to plead new events that happened after the first litigation was dismissed, but not for allowing him to plead facts that had already occurred and could have been pleaded in the first suit. Facts excusing a failure to make demand that could have been pleaded in the first complaint, or by amendment before dismissal,

-25-

should be barred for the very same reasons that support applying claim preclusion to dismissals for failure to state a claim.[9] Moreover, even under the doctrine of issue preclusion, a party who has litigated an ultimate fact may not bring forward different evidentiary facts in order to relitigate the finding. In re V&M Mgmt., Inc., 321 F.3d 6, 9 (1st Cir. 2003); Pignons, 701 F.2d at 2-3; Miles v. Aetna Cas. & Sur. Co., 589 N.E.2d 314, 317-18 (Mass. 1992); see Restatement (Second) of Judgments, § 27 cmt. c ("[I]f the party against whom preclusion is sought did in fact litigate an issue of ultimate fact and suffered an adverse determination, new evidentiary facts may not be brought forward to obtain a different determination of that ultimate fact.").

If we refuse to take cognizance of old news that could have been presented to the state court before dismissal, most of the plaintiffs' contentions of significant change in the issue disappear. The plaintiffs contend that they bolstered their pleading of futility by alleging in the Second Amended Complaint that there were "red flags" in SEC filings in 2001 and 2002 and in a securities fraud case filed by other plaintiffs in March 2003. They further allege that the restatement of financial results for

---

[9]Those reasons, again, are liberality of modern pleading rules and fairness to the defendant, supra at 21-22. We recognize that the state plaintiffs did not benefit from the most liberal of pleading and amendment rules, since Rule 23.1 requires pleading with particularity rather than notice pleading, and the state court denied the plaintiffs permission to amend. These rigors are not so substantial as to exempt the plaintiffs from the ordinary rule that available facts should be pleaded in the first action.

2001, 2002, and the first three quarters of 2003, announced on July 28, 2004, together with the identification of material weaknesses in Sonus's internal controls and procedures announced the same day, cures the lack of particularity that doomed the state court complaint. These facts all had been made public and were available to the state plaintiffs before their suit was dismissed on September 27, 2004. Assuming the other conditions for issue preclusion exist, the plaintiffs therefore should be precluded from relying on any of the new facts that were available at the time the state suit was dismissed on September 27, 2004.

The only material allegation in the Second Amended Complaint that occurred after the state dismissal was the allegation about the March 15, 2005 Sonus Form 10-K/A. This allegation was cumulative to those made about the Form 10-K/A filed on July 28, 2004. This one new allegation by no means transfigures the demand futility issue so that issue preclusion is inappropriate. We conclude that the issues are substantially identical.

### C. Privity and Adequacy of Representation

The plaintiffs argue that there is no privity between them and the state court plaintiffs. It is a matter of black-letter law that the plaintiff in a derivative suit represents the corporation, which is the real party in interest. Ross v. Bernhard, 396 U.S. 531, 538-39 (1970); Clark v. Lacy, 376 F.3d 682, 686 (7th Cir. 2004). Under Massachusetts law, a derivative suit is prosecuted "in

the right of a . . . corporation."  Mass. Gen. Laws Ann. ch 156D, § 7.40.  Standing to represent a foreign corporation is governed by the laws of the state of incorporation, Mass. Gen. Laws ch. 156D, § 7.47, and Delaware law is in accord with the prevailing rule that the shareholder in a derivative suit represents the corporation. In re M&F Worldwide Corp. S'holders Litig., 799 A.2d 1164, 1174 n.31 (Del. Ch. 2002).

Although no Massachusetts case has specifically said so, if the shareholder can sue on the corporation's behalf, it follows that the corporation is bound by the results of the suit in subsequent litigation, even if different shareholders prosecute the suits,[10] see Nathan v. Rowan, 651 F.2d 1223, 1226 (6th Cir. 1981); Cramer v. Gen. Tel. & Elecs. Corp., 582 F.2d 259, 267 (3d Cir. 1978), subject to the important proviso that the shareholder must fairly and adequately represent the corporation. See section II.C (1), infra.

The plaintiffs contend that the rule that all derivative plaintiffs represent the corporation should not apply in this case because the state court judgment did not adjudicate the corporation's rights, but only the question of whether the state court plaintiffs should be permitted to bring suit on behalf of the

---

[10]Deborah A. DeMott, Shareholder Derivative Actions § 4:19, at 4-244 (2003)("This structural fact about derivative litigation makes irrelevant questions of 'virtual representation,' that is, the representation by a party of a nonparty outside the context of a class action.")

corporation. The plaintiffs' argument could have some force if the question in the state court had concerned some issue peculiar to the state court plaintiffs or the adequacy of their representation, see, e.g., Saylor, 391 F.2d at 968-69 (suit by second derivative plaintiff not barred by first plaintiff's failure to post bond), but it did not. The question was whether demand on the board of directors would have been futile, which is an issue that would have been the same no matter which shareholder served as nominal plaintiff. The defendants have already been put to the trouble of litigating the very question at issue, and the policy of repose strongly militates in favor of preclusion. See Henik v. LaBranche, 433 F. Supp. 2d 372, 380-81 (S.D.N.Y. 2006); see generally Ramallo Bros. Printing, Inc. v. El Día, Inc., 490 F.3d 86, 2007 WL 1732889, at *6 (1st Cir. 2007) (policy of repose).

### (1) Caveat for adequate representation

However established the principle that the same party, the corporation, has sued in each derivative action, it is subject to an important caveat: to bind the corporation, the shareholder plaintiff must have adequately represented the interests of the corporation. Nathan, 651 F.2d at 1226; Restatement (Second) of Judgments §§ 59 cmt. c (whether earlier derivative suit precludes later litigation depends on rules stated in sections 41 and 42) & 42(1)(d) & (e) (describing when representation is inadequate); cf. Mass. Gen. Laws Ann. ch 156D, § 7.41 (shareholder may only maintain

-29-

derivative proceeding on behalf of Massachusetts corporation if he "fairly and adequately represents the interests of the corporation in enforcing the right of the corporation.")

The adequacy of representation has been a subject of great concern in derivative suits because of the possibilities for collusion between the nominal plaintiff and the defendants. See Note, Res Judicata in the Derivative Action: Adequacy of Representation and the Inadequate Plaintiff, 71 Mich. L. Rev. 1042, 1043 (1973); 7C Federal Practice & Procedure § 1839, at 175; Shareholder Derivative Actions § 4:19, at 4-245. Precluding the suit of a litigant who has not been adequately represented in the earlier suit would raise serious due process concerns. Cramer, 582 F.2d at 269; Ji v. Van Heyningen, No. CA 05-273 ML, 2006 WL 2521440, at *5 (D.R.I. Aug. 29, 2006).

Federal Rule of Civil Procedure 23.1 and Massachusetts Rule of Civil Procedure 23.1 have a number of provisions directed at the problem of inadequate representation, but neither the state case nor the federal one has survived to the point at which those protections would have come into play. First, both the state and federal rules provide that a derivative action "may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association," see Fed. R. Civ. P. 23.1 and Mass R. Civ. P. 23.1, but

the adequacy of the plaintiffs' representation was not litigated under this rule in either action. Second, both the state and federal rules provide that a derivative suit may not be dismissed without notice to shareholders and court approval. The federal rule has been interpreted as not requiring notice before involuntary dismissals. See Burks v. Lasker, 441 U.S. 471, 485-86 n.16 (1979); Abbey v. Control Data Corp., 603 F.2d 724, 728 n.5 (8th Cir. 1979); 7C Federal Practice & Procedure § 1839, at n.39. However, some involuntary dismissals have been held to be the functional equivalent of a voluntary dismissal and thus are subject to the notice-before-dismissal requirement. The Second Circuit in Papilsky v. Berndt, 466 F.2d 251 (2d Cir. 1972), held that a dismissal of a derivative suit for failure to answer interrogatories would not be accorded res judicata effect because no notice had been given to the shareholders before dismissal. The holding in Papilsky was based in part on the ease with which a disingenuous plaintiff could engineer a dismissal for failure to answer discovery in order to evade the notice requirement. The holding was also based in part on the fact that the circumstances of a dismissal for failure to answer interrogatories suggested that the plaintiff was not an assiduous litigant. Id. at 258-60. In contrast, in this case, the state plaintiffs actively litigated the demand futility issue, and the federal plaintiffs do not urge that notice should have been given before dismissal of the state suit. Although no one contends

that the state court was required to give notice before dismissing for lack of demand or futility, the lack of such notice makes it all the more important to ascertain, before according that dismissal preclusive effect, that the state plaintiffs adequately represented the corporation.

Moreover, Massachusetts Rule of Civil Procedure 23.1 and its federal analog lack the class certification procedure that the federal version of Rule 23(1) provides in class actions, which requires notice and other protections before the representative becomes vested with power to represent class members. Since the posture of this case does not bring it within the safeguards set up by Rules 23 or 23.1, we must carefully consider the plaintiffs' allegations that the state plaintiffs' representation was inadequate.

The plaintiffs support their argument by citing Restatement (Second) of Judgments § 42(1)(e), which states that a person will not be bound by an earlier suit in which another party purports to represent him if "[t]he representative failed to prosecute or defend the action with due diligence and reasonable prudence, and the opposing party was on notice of facts making that failure apparent." Comment f to this section demonstrates that the level of inadequacy specified is not "failure of a representative to invoke all possible legal theories or to develop all possible resources of proof," but rather representation "so grossly deficient

as to be apparent to the opposing party."  The federal plaintiffs argue that the state plaintiffs' representation of the corporation was inadequate (they do not venture to say "grossly deficient") because the state plaintiffs did not assert all the facts alleged in the Second Amended Complaint.

### (2) Standard for alleging futility of demand on board

In order to determine whether the state plaintiffs were seriously remiss in failing to state the facts that are now included in the Second Amended Complaint, we must set out the substantive standard for demand futility under Delaware law.  See Kamen v. Kemper Fin. Servs. Inc., 500 U.S. 90, 108-09 (1992) (looking to law of state of incorporation for demand and excuse requirements).  We determine first, whether allegation of the facts stated in the Second Amended Complaint would have resulted in a finding of demand futility, and second, whether failure to allege those facts was so "grossly deficient" that the defendants were on notice of the state plaintiffs' inadequacy as representatives.  We start with the premise that Massachusetts Rule 23.1, like the federal analog, requires the plaintiff to plead demand futility "with particularity," which is a higher standard than ordinary notice pleading.  See Kauffman, 479 F.2d at 263-64; In re Tyson Foods Inc., Consol. S'holder Litig., 919 A.2d 563, 582 (Del. Ch. 2007) (demand futility must be pleaded in greater detail than ordinary allegations of breach of duty of loyalty).  The state court relied on Delaware

-33-

authority requiring "particularized factual statements," which reflects the notion that the particularity requirement is not a procedural, but a substantive rule, and therefore is governed by Delaware law. See Kauffman, 479 F.2d at 263 (quoting Bartlett v. N.Y., N.H. & H. R.R., 109 N.E. 452, 456 (Mass. 1915)). We consider the particular allegations as true for purposes of the motion to dismiss, see Harhen v. Brown, 730 N.E.2d 859, 862 (Mass. 2000), but we give no effect to conclusory allegations, see Levine v. Smith, 591 A.2d 194, 207 (Del. 1991), overruled on other grounds, Brehm v. Eisner, 746 A.2d 244 (Del. 2000).

Delaware law requires that in a case such as this, in which the directors are accused of nonfeasance rather than misfeasance, a would-be derivative plaintiff either must make demand on the board to bring the suit[11] or else must allege particular facts which "create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in

---

[11]The reader may wonder why a would-be derivative plaintiff would not simply make demand and thereby avoid the whole issue of whether demand is excused. The answer is that if the board agrees to sue, the shareholder will lose control over the suit, and if the board declines to sue, the courts will not entertain the shareholder's derivative suit unless the board's decision can be proved not to have been a valid exercise of business judgment. See Aronson v. Lewis, 473 A.2d 805, 813 (Del. 1984), overruled on other grounds, Brehm v. Eisner, 746 A.2d 244 (Del. 2000); Shareholder Derivative Actions §§ 5:10, 5:11. Furthermore, by making a demand, the shareholder concedes that the board was sufficiently disinterested and independent to consider the demand. Levine, 591 A.2d at 197-98, 212; Shareholder Derivative Litigation § 5:10, at 5-38.

-34-

responding to a demand." Stone v. Ritter, 911 A.2d 362, 366-67 (Del. 2006) (emphasis added)(internal quotation marks omitted). Demand will be excused only if a majority of the board members are interested or lack independence. See Rales v. Blasband, 634 A.2d 927, 930 (Del. 1993).

The first way of showing demand futility, "interest" of the directors, means that the director stands to gain or lose personally and materially depending on the board's decision. Id. at 936. Somewhat counterintuitively, the fact that the director himself is named as a defendant in the suit does not create a reasonable doubt about whether the director is "interested" in the decision about whether to bring the suit on behalf of the corporation. See Aronson v. Lewis, 473 A.2d 805, 809, 818 (Del. 1984) (all directors were sued, but futility of demand not shown), overruled on other grounds, Brehm v. Eisner, 746 A.2d 244 (Del. 2000). However, a reasonable doubt can be created if the complaint shows a "substantial likelihood of [the director's] liability" on the suit. Rales, 634 A.2d at 936. The standard for holding directors liable for damages resulting from breach of the duty of care is gross negligence. Aronson, 473 A.2d at 812. If the corporate charter exculpates the directors from damages liability for breach of their duty of care (which Sonus's charter does), in order to establish a "substantial likelihood of liability" on a claim based on nonfeasance, the plaintiff must plead facts showing

-35-

the necessary conditions predicate for director oversight liability: (a) the directors utterly failed to implement any reporting or information system or controls; or (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention.  In either case, imposition of liability requires a showing that the directors knew that they were not discharging their fiduciary obligations.  Where directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities, they breach their duty of loyalty by failing to discharge that fiduciary obligation in good faith.

Stone, 911 A.2d at 370 (footnotes omitted).  "[A] failure to act in good faith requires conduct that is qualitatively different from, and more culpable than, the conduct giving rise to a violation of the fiduciary duty of care (i.e., gross negligence)."  Id. at 369.  To prove lack of good faith by virtue of failure to supervise requires "a showing that the directors were conscious of the fact that they were not doing their jobs."  Guttman v. Huang, 823 A.2d 492, 506 (Del. Ch. 2003).  Examples of the kind of allegations necessary to show conscious neglect of the duty to supervise the company's financial reporting would be: "contentions that the company lacked an audit committee, that the company had an audit committee that met only sporadically and devoted patently inadequate time to its work, or that the audit committee had clear notice of serious accounting irregularities and simply chose to ignore them or, even worse, to encourage their continuation."  Id. at 507.

The second way of showing demand futility is to show that the board members lack independence.  "Independence means that a

-36-

director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." Aronson, 473 A.2d at 816. A director's independence may be compromised by financial, familial or social ties to other persons who are interested in the board's decision, but only if the plaintiffs plead facts that would support the inference that the director would be more willing to risk his or her reputation than to risk the relationship with the interested person. Beam v. Stewart, 845 A.2d 1040, 1052 (Del. 2004). Friendships and business relationships within a board, even such relationships that arose before the directors became board members, are not enough to create a reasonable doubt about directors' independence from each other, although a "particularly close or intimate personal or business affinity" could do so. Id. at 1051. In practice, the standard is demanding. For instance, in Stewart, the derivative complaint described the "longstanding friend[ship]" between the director and Martha Stewart, the owner of 94% of the stock in the corporation, and included a news article detailing the "close personal relationship" between the two. Id. at 1045, 1051. The Delaware Supreme Court held that the complaint did not present even a "close call" for establishing a reasonable doubt about the director's independence from Stewart in order to establish futility of a demand to sue Stewart. Id. at 1054. "Mere allegations that [the directors] move in the same business and social circles, or a

characterization that they are close friends, is not enough to negate independence for demand excusal purposes." Id. at 1051-52.

### (3) Whether differences in federal and state complaints show deficiency in representation

The federal plaintiffs contend that they have cured the deficiencies in the state complaint by alleging "red flags" that made the directors aware of accounting problems in 2001 and 2002 and so would show a substantial likelihood of liability for the directors and a corresponding interest in avoiding the suit. These allegations are not impressive evidence that the directors knew of problems and chose to do nothing. See Stone, 911 A.2d at 370 (oversight liability requires conscious disregard of known responsibilities). The so-called red flags are merely statements that the company's growth would call for increased attention to accounting and control systems; if anything, these statements are evidence that the company was attempting to manage the risk that accompanied its rapid growth, not a concession that Sonus and its directors were consciously failing in their duties.

The federal plaintiffs also point to their allegations that certain directors had been sued in March 2003 for securities fraud on the ground that (1) they overstated the quality and performance of Sonus's products and (2) that Sonus gave particular customers undisclosed kickbacks in order to get them to buy Sonus products. The securities suit alleged that the undisclosed aspects of Sonus's sales would have an adverse effect on the company's

financial results and would render its financial statements misleading. The Second Amended Complaint does not say that the plaintiffs prevailed on the securities suits. To take the hearsay assertions alleged in a different complaint as true would circumvent the requirement of Rule 23.1 that the derivative complaint be verified, but we can accept the allegations in the securities suit as indicative that the directors had notice of those allegations in 2003. However, the Second Amended Complaint does not indicate that the problems with the quality of Sonus's products or the practice of giving customers undisclosed kickbacks had any part in leading to the restatement of financial results for 2001-2003. The derivative complaint is not based on problems with product development, so the existence of the securities suit at most shows that the board was on notice of a different problem. As for the financial reporting effects of undisclosed kickbacks, in the long list of ten types of internal controls problems unearthed by Sonus's internal investigation, one perhaps describes the kind of problem alleged in the securities complaint: "We do not have adequate procedures and controls to ensure that . . . all significant terms of our arrangements with customers are documented and understood to ensure that our revenue recognition criteria are satisfied." However, the Second Amended Complaint does not allege that this snippet from the investigation results referred to the same incidents described in the securities complaint or that those

incidents contributed to cause the restatements. In short, the allegations from the securities lawsuits show only that the directors knew of allegations of some business and accounting problems, but not necessarily the ones that the derivative suit relies on.

Regarding the question of whether the directors lacked independence, the federal complaint adds nothing material to the allegations in the state complaint of Anderson's insider trading or the allegations of financial and social relationships among the board members. The federal plaintiffs contend that they have transformed the issue by alleging that the board continued to reward officer-directors Ahmed and Gruber by granting them raises and titles after the announcement of accounting problems, which, the plaintiffs say, shows the board was in thrall to the two insiders. If we were to conclude that continuing to promote inside directors after the events in question showed lack of independence of the board, we would truly revolutionize the law of demand futility, since by the same principle we would also have to infer lack of independence from the fact that the board continued the officers' employment, refrained from suing them, etc. The board's decisions about retaining and promoting corporate officers fall squarely within its business judgment. Besides, the Second Amended Complaint alleged that the person most directly involved in the accounting problem, Chief Financial Officer Nill, was fired; nothing in the

complaint shows that this was not an adequate response to the accounting problems uncovered by the internal investigation. The allegations in the federal complaint about interlocking directorships of the board members are the kind of "structural bias" allegations that were held inadequate to show lack of independence under Delaware law in Beam, 845 A.2d at 1050-54.

The federal plaintiffs maintain that revelations made after the state court complaint was filed show a substantial likelihood of liability on the part of the directors. In particular, they rely on the announcement in July 2004 that Sonus's financials for 2001, 2002, and the first three quarters of 2003 would be restated, leading to increased operating losses in 2002 and 2003. They similarly rely on the Form 10-K for 2004, which included a litany of areas in which Sonus's controls had been determined to be inadequate.

All of these 2004 revelations were made after the plaintiffs filed their suits in February and March 2004. The plaintiffs' burden is to show that a demand on the directors would have been futile at the time they filed their suit, not at a later time. Aronson, 473 A.2d at 810; Shareholder Derivative Actions at § 5:12. Events that occur after the suit is filed are irrelevant to the extent they show conditions at a later time. See Grossman v. Johnson, 674 F.2d 115, 124 (1st Cir. 1982) (allegation that directors announced their opposition to suit in a motion to dismiss

the suit was irrelevant to futility of pre-suit demand); Vanderbilt v. Geo-Energy, Ltd., 725 F.2d 204, 211 (3d Cir. 1983) (later appointment of disinterested special litigation committee irrelevant to whether board would have fairly considered demand before committee appointed); Cramer v. Gen. Tel. & Elecs. Corp., 582 F.2d 259, 276 (3d Cir. 1978)(opposition to suit by special litigation committee after suit filed irrelevant to futility of pre-suit demand on board). However, revelations made after the suit was filed but which illuminate conditions prevailing at the time of suit may be taken into account in deciding whether the board was disinterested and independent at the time the suit was filed. McCall v. Scott, 239 F.3d 808, 823 (6th Cir. 2001), amended on other grounds on denial of rehearing, 250 F.3d 997 (6th Cir. 2001); Levine, 591 A.2d at 201-08 (entertaining motion to reopen judgment on ground that newly discovered evidence established board was not independent at time suit was filed). The allegations about the announcements in 2004 thus can be considered only as evidence that there were in fact inadequacies in Sonus's internal controls and procedures as they existed as of December 31, 2003, and that such weaknesses resulted in restatement of the financials for two years and three quarters, which would illuminate facts that existed when the suit was filed; the post-suit announcements may not be taken as evidence that the directors knew of or admitted such weaknesses, because the notice or admission would not have occurred until after the suit had been

-42-

filed.

Whereas the state complaint alleged that there was reason to believe that Sonus might have to restate its 2003 financials as a result of accounting and control irregularities, the Second Amended Complaint alleged that Sonus did in fact restate financials for two years and three quarters, increasing the net loss for two of those years, and it listed the areas in which Sonus found accounting and control weaknesses. The difference between admitting irregularities that are suspected to be of a magnitude to require restatement of financials and admitting irregularities that have been confirmed to be of such magnitude is a meaningful difference. Moreover, the increased number of the reporting periods affected is relevant because it shows the problem was not fleeting or anomalous. Therefore, the state plaintiffs would have strengthened their complaint by amending to plead the results of the investigations.

However, we cannot conclude that the state complaint would have fared better even with the more conclusive evidence of accounting irregularities. The principal facts on which the Second Amended Complaint relies to establish directorial liability are (1) the fact of the restatement of financial results; and (2) the list of internal accounting and control weaknesses revealed by the Sonus internal investigation. There is no allegation that Sonus had no system of information or controls in place. The fact that failures of internal controls led to the restatement of financials with worse

results than originally reported is not enough under Delaware law to establish demand futility. See Stone, 911 A.2d at 370-71 (bank's failure to comply with laws led to a huge fine, but did not establish demand futility; bad outcome did not prove bad faith); Guttman, 823 A.2d at 495, 507 (no substantial likelihood of directorial liability was shown by the existence of accounting irregularities that resulted in a restatement of earnings). Nor is futility established by the fact that Sonus conducted an internal review that found many material weaknesses in its accounting and control systems. The findings in the internal review report are actually evidence of directorial supervision, rather than evidence of failure to supervise. For instance, in Kenney v. Koeniq, 426 F. Supp. 2d 1175, 1183 (D. Colo. 2006), the corporation confessed to material weaknesses in internal controls that caused it to restate its financials for two years; the court held that the admissions did not show a sustained and systematic failure of oversight by audit committee members, but "quite the opposite," since the corporation detected and corrected its failings. To meet the standard established in Stone, to show directorial liability where there was a reporting and information system in place, the plaintiffs would need to show that the directors knew of the inadequacies and failed to act. Stone, 911 A.2d at 370. In other words, if the plaintiffs had pleaded that something like the internal investigation report in this case had been presented to the directors before the period

in question, not after it, and that the directors had failed to address the problems revealed in the report, then the complaint would have met the standards for futility of a demand on that board. However, allegations that the directors became aware of problems and promptly conducted an investigation rooting out the causes for failure does not constitute a showing of conscious neglect and misfeasance, yet those are precisely the sort of allegations the plaintiffs contend would have saved the state complaint.

The federal plaintiffs further allege that Ferri and Severino "were aware of the Company's rampant internal control deficiencies and financial reporting problems" by virtue of the fact that they served on the audit committee. Allegations that directors "knew" of particular problems solely because of their position in the corporation, without any particularized facts indicating actual knowledge, are not sufficiently specific to show actionable nonfeasance leading to demand futility under Delaware law. Guttman, 823 A.2d at 496-98, 507.

### (4) Other indicia of inadequate representation

The federal plaintiffs contend that the corporation was poorly represented by the state plaintiffs because the state plaintiffs abandoned their appeal. This argument might seem to raise an issue of fact inappropriate for resolution on the pleadings, but the plaintiffs do not say so, and the entirety of the argument in their opening brief consists of a participial phrase in

-45-

a sentence mainly about the inadequacy of the state complaint. Of course, the more inadequate the state complaint, the less likely the state plaintiffs would have been to prevail on their appeal. If the appeal was unlikely to be successful, the state plaintiffs' abandonment of that appeal does not indicate their representation was inadequate. Nathan, 651 F.2d at 1228. The plaintiffs' own brief therefore refutes the notion that the state plaintiffs' abandonment of their appeal could establish inadequate representation.

**\*\*\***

In sum, we cannot conclude that the allegations in the Second Amended Complaint add material allegations that would pass the test for pleading demand futility under Delaware law. It follows that the state plaintiffs were not grossly deficient in failing to include such allegations in the state complaint. The federal plaintiffs have not come forward with any reason to classify the state plaintiffs' representation as inadequate. Therefore, we conclude that the federal plaintiffs are bound by the dismissal of the state litigation, and this suit was rightly dismissed on the ground of issue preclusion.

The judgment of the district court must be and is AFFIRMED.